## THE STATE v. JULIUS A. GERHARDT, Appellant.

### Division Two, March 12, 1913.

1. **FALSE PRETENSE: Information: Several Charges: Proof.** Where several false pretenses are jointly charged in the information, it is only necessary to prove that one of said pretenses was in fact untrue. In such case the unproven charge will be treated as surplusage, and need not be submitted to the jury; and if the information contains another charge properly alleged and properly submitted, and it is proven, the conviction will stand.

2. ————: **Limitations.** False representations which result in a crime should be treated as having been made at the time their victim delivered his money or property to the party making them. It is only when the misrepresentations bear fruit by causing some one to part with money or property that the statute is violated. Where defendant delivered to Akerman a note dated May 6, 1908, and payable to his order, and reciting that the maker had deposited or pledged with said "Akerman as col-

lateral security for the payment of this note, deed of trust for $4000, dated April 14th, 1908," on certain real estate, and there is no evidence that Akerman ever saw the note until May 14, 1908, when it was delivered to him, an information filed on May 9, 1911, is not barred by limitations. Although the note, dated May 6, 1908, bore a false recital that the deed of trust "had been pledged to said Akerman," and that false recital may have aided in deceiving him, yet the crime dates from the day the note was actually seen by and delivered to Akerman, which was May 14, 1908—the facts being that the note was of no value, and on a promise to deliver to him a note for $4000 secured by a deed of trust on valuable real estate Akerman parted with $4000 to defendant or his associate in business.

3. ————: Conflict in Evidence. The issue of defendant's guilt of the charge of false pretense, where the evidence of the State makes out a clear prima-facie case, and that for defendant indicates that he is not guilty of any wrongdoing, was for the jury, who looked into the faces of the witnesses and were in a far better position to judge of the truthfulness of their statements than are the judges of the appellate court.

Appeal from St. Louis City Circuit Court.—*Hon. Wilson A. Taylor*, Judge.

AFFIRMED.

*Charles J. Maurer* for appellant.

(1) The indictment is fatally defective. (2) The prosecution was not begun within the time required by law. (3) The trial court should have instructed the jury to acquit the defendant.

*Elliott W. Major*, Attorney-General, and *John M. Dawson*, Assistant Attorney-General, for the State.

(1) (a) The information is sufficient. Laws 1911, pp. 194, 195; State v. Beaucleigh, 92 Mo. 490; State v. Williams, 77 Mo. 310; State v. Porter, 75 Mo. 171; State v. Williams, 12 Mo. App. 415; State v. McNerney, 118 Mo. App. 60. (b) The information sufficiently identified the name of the victim. State v. McChesney, 90 Mo. 120. And meets the objection contained in: State v. Pickett, 174 Mo. 663; State v. Hesseltine, 130 Mo. 468; State v. Clay, 100 Mo. 578; State

v. Terry, 109 Mo. 601; State v. Janson, 80 Mo. 97. (c) The test is whether or not the defendant could plead in bar the judgment rendered against him, be it either a conviction or acquittal. State v. Woodward, 156 Mo. 147. All the elements necessary to charge the crime are laid in this information, and the constitutional provision is complied with. Constitution, article 2, section 22; State v. Vorback, 66 Mo. 168. (d) The charge must contain a certain description of the crime of which the defendant is accused, and a statement of facts by which it is constituted, so as to identify the accusation lest the grand jury should file the bill for one offense, and the defendant be put upon his trial for another without any authority. 1 Chitty's Crim. Law, 169; State v. Murphy, 140 Mo. 267; U. S. v. Cruikshank, 1 Woods (U. S.) 308; State v. Boyne, 88 Mo. 604; Rosen v. U. S., 161 U. S. 40. (2) The sufficiency of the evidence is for the jury. State v. Tetrick, 199 Mo. 100; State v. Mathews, 202 Mo. 147; State v. McCullough, 171 Mo. 574; State v. Williams, 199 Mo. 137.

BROWN, P. J.—Defendant was convicted under an information charging him with obtaining property from one Louis Ackermann by false pretenses, as prohibited by section 4565, Revised Statutes 1909, amended by Laws 1911, p. 195, and appeals from a judgment of the circuit court of St. Louis City fixing his punishment at two and one-half years in the penitentiary.

On the part of the State there is substantial evidence that defendant and one Conrad Kraft were officing together in the city of St. Louis in the month of May, 1908, when a notice, emanating from their office and advertising for sale a $4000 note secured by a deed of trust on property at No. 4939, St. Louis avenue, attracted the attention of one Louis Ackermann, who states that defendant sent him the advertisement. It

does not clearly appear whose name was signed to the advertisement.

Ackermann's evidence indicates that he was either so mentally stupid or so ignorant of business affairs that he did not know a note or deed of trust when he saw such documents. While his evidence is clumsy and, in some places, indefinite, he evinces no inclination to exaggerate or swear falsely. He (Ackermann) possessed $4000 which he desired to loan upon real estate security and called at the office of defendant and Kraft about May 11, 1908, to arrange for the purchase of the note and deed of trust above mentioned.

The note secured by the deed of trust was dated April 14, 1908, and payable three years after date, while Ackermann only desired to loan his money for one year, so that no deal was made when Ackermann called on defendant the first time. On May 14, 1908, Ackermann called at defendant's office a second time to see what could be done about purchasing the above-mentioned secured note. Kraft was absent and defendant Gerhardt went with Ackermann to the Mercantile Trust Company, where he took from a safety deposit box and delivered to Ackermann a title guaranty certificate and an insurance policy, both of which contained a description of the property situated at No. 4939, St. Louis avenue. Mr. Ackermann further testifies that defendant on the same day and while at the Mercantile Trust Company's office wrote and delivered to Ackermann the following receipt:

Received of Louis Ackermann $4000 for D. T. at 4939, St. Louis. Ave., Lot 13, Blk. 5260.    Date 14, 1908.

KRAFT-GERHARDT REALTY Co.
Per J. A. GERHARDT.

He also at the same time delivered to Ackermann the following promissory note:

St. Louis, Mo., May 6th, 1908.
$4000.00.

One year after date we promise to pay to Louis Ackermann, four thousand . . . dollars, for value received, with interest after date at the rate of six per cent. per annum, we having deposited or pledged with said Louis Ackermann as collateral security for the payment of this note, deed of trust for $4000, dated April 14th, 1908, on property No. 4939 St. Louis Avenue, St. Louis, Missouri.

CONRAD KRAFT, JR. REALTY COMPANY,
Per CONRAD KRAFT, JR.

Why the note above copied was dated five days before the negotiations for the loan were begun does not appear. It is most probable that the negotiations were begun on May 6, 1908, instead of May 11th of that year. The note, as will be seen, was executed by Kraft, while the receipt is signed by defendant Gerhardt in the name of the Kraft-Gerhardt Realty Co.

While at the Mercantile Trust Company's office Ackermann seemed to have some fear that he was not getting all the papers that he ought to have, and said to defendant: "I don't really want this loan unless you can get this deed of trust on this money;" to which defendant replied: "That will be all right." This reply seemed to remove the doubt resting in Ackermann's mind and he thereupon caused the treasurer of the trust company to make out and deliver to defendant a check for $4000 payable to the Kraft-Gerhardt Realty Company. Ackermann testifies that defendant suggested that the check be made payable to the Kraft-Gerhardt Realty Company. Ackermann then took the four papers given him by defendant and went home.

According to Ackermann's evidence Kraft was not at his office either the first or second time he called, and defendant alone went with him to the Mercantile Trust Company to get the papers and close the deal. If Ackermann's version of the transaction is correct he parted with his $4000 before he ever met Kraft.

About fifteen days later Ackermann again called

on defendant, when, as he describes it, he "was trying to find out really if there was anything like a deed of trust to be had or to be seen." Asked what explanation defendant gave, Ackermann replied: "Well, he plugged the thing again, and says, 'That will be all right.'"

Mrs. W. E. Wende, the sister of Ackermann, interested herself in the transaction a short time after the defendant received the check for $4000, and calling on defendant demanded to know: "What kind of business is he doing with Louie, that he did not give him the right papers that he buys, and he said we are all right." She called a second time and was again assured by defendant, as she says "that he would give it to Louie and that he was going to fix everything all right." Ackermann never did receive the note and deed of trust which he attempted to purchase from defendant, but admits that several months later Kraft paid him sixty dollars interest and defendant paid him three dollars.

Ackermann kept dunning the defendant for the $4000 at frequent intervals until December, 1908, when Kraft, Gerhardt and one Truchon organized a $10,000 corporation, styled the Kraft-Gerhardt Realty Company. The shares of this company were $100 each "actually paid up," but the only assets, if any, put into the corporation, was a small piece of vacant land owned by Kraft, the value of which is not shown, and there is nothing in the record to indicate that it possessed substantial value. Defendant subscribed for sixty-nine shares of the new company's stock; Kraft for thirty shares and Truchon for one share. Defendant transferred to Ackermann forty of his shares, taking his receipt therefor which reads as follows:

Kraft-Gerhardt Realty Co.,

St. Louis, Mo., Jan. 7, 1909.

Received of Julius A. Gerhardt certificate number five for forty shares of the capital stock of Kraft-Gerhardt Realty Company of the par value of $100 each, in consideration of which

I hereby assign, sell and transfer to said Julius A. Gerhardt, all my right, title and interest in and to a certain promissory note, dated on or about May 14th, 1908, executed by the Conrad-Kraft Jr. Realty Company, for the sum of four thousand dollars; also any collateral deposited as security with said note. Also received the sum of one hundred and sixty dollars cash, in full of accrued interest on said note to date. I hereby certify that said note and collateral cannot now be produced and that the same is not in the hands of any person or persons legally entitled to the same.

MR. LOUIE ACKERMANN.

The defendant testifying in his own behalf, states that while he officed with Kraft in May, 1911, he was not in partnership with the latter at that time; that Kraft secured building loans on property which defendant constructed. That there was no community of interest between him and Kraft on May 14th, when defendant gave Ackermann the receipt for the $4000 check in the name of the Kraft-Gerhardt Realty Company, as before recited. Further testifying defendant states that he had no interest in or connection with the $4000 note and deed of trust which Ackermann attempted to purchase. That Ackermann came to the joint office of Kraft and Gerhardt on May 14, 1911, with a Mercantile Trust Company check payable to the Kraft-Gerhardt Realty Company for $4000 while Kraft was absent; and that Ackermann being in a hurry to return to his work defendant gave him the receipt for the check introduced in evidence. That Kraft came into the office while Ackermann was still there and defendant gave the check to Kraft in Ackermann's presence; whereupon Kraft went with Ackermann to the bank to get the note and deed of trust. That defendant never gave Ackermann any other papers than the receipt and did not know until several weeks afterwards that Ackermann had not received the note and deed of trust which defendant supposed Ackermann was buying from Kraft. That he (defendant) asked Kraft why he did not deliver the note and deed of trust to Ackermann and received a reply

that it was none of his business. Defendant further testifying states that Kraft became indebted to him in the sum of $2900, and that he took stock in the Kraft-Gerhardt Realty Company solely because he saw no other way of collecting what Kraft owed him. That the organization of the Kraft-Gerhardt Realty Company was not under contemplation in May, 1908, when the alleged crime was committed. That he (Gerhardt) subscribed for the forty shares of stock which were afterwards transferred to Ackermann just to accommodate Kraft. Also that Kraft wrote the receipt which Ackermann signed for the stock, and that he (defendant) never knew that said receipt contained a clause transferring the $4000 note to him until the receipt was introduced at the trial. Defendant introduced a deed of trust which in date, parties, property conveyed and amount corresponds with the one which Ackermann attempted to purchase. His claim is that he found this deed of trust in 1911 among some old discarded papers which Kraft had stored in a shed. No evidence was introduced tending to show what became of the $4000 note of April 14, 1911, which the deed of trust was given to secure. However, that fact is not important in view of defendant's admission on the stand that he never, at any time, had any interest in either the note or deed of trust which, if Ackermann is correct, he pretended to sell to the latter. The remainder of defendant's evidence is an emphatic denial of the statments of Ackermann and his sister, Mrs. Wende, and tends to prove that Kraft alone was responsible for obtaining the $4000 from Ackermann. Several witnesses testified to the good reputation of defendant. He was tried separately. It appears, by inference at least, that Kraft absconded and was not arrested.

For reversal defendant asserts (1) that the information is fatally defective; (2) that if any crime was committed it is barred by the three-year Statute

of Limitations, and (3) that the evidence is insufficient
to support the verdict.

I.   Defendant contends that the information is
fatally defective in this, that while it recites that Ac-
kermann was deceived by the defend-
ant's false representations and induced
thereby to loan the $4000, it fails to re-
cite that said Ackermann did in fact deliver and trans-
fer to defendant the $4000 treasurer's check of the
Mercantile Trust Company, citing State v. Phelan, 159
Mo. 122; State v. Barbee, 136 Mo. 440; and State v.
Hubbard, 170 Mo. 353. This contention cannot be sus-
tained for the reason that the same paragraph of the
information which recites that Ackermann believed the
false statements of defendant and was thereby de-
ceived and induced to loan the $4000, contains the fur-
ther allegation that "Ackermann did then and there
deliver and transfer" to defendant the treasurer's
check of the Mercantile Trust Company set out in the
indictment.

There is another charge in the information that
defendant represented that he had the $4000 note and
deed of trust in a safety deposit box of the German
Savings Institution and would keep it there subject
to the demand of Ackermann.   There is a defect in
this part of the information, but that defect does not
impair the validity of the first allegation, which
charges that defendant represented that he and Kraft
were "then and there the owners of and had in their
possession" the promissory note for $4000 secured by
deed of trust.

The charge that defendant falsely represented
that he had the note and deed of trust in a safety de-
posit box of the German Savings Institution was not
clearly proven, but that fact does not affect the valid-
ity of the conviction, for the reason that where several
false pretenses are jointly charged it is only necessary

to prove that one of said pretenses was in fact untrue. [State v. Keyes, 196 Mo. 136; 2 Bishop's New Criminal Law, sec. 418.]

That part of the indictment which refers to the · depositing or keeping of the note and deed of trust in the safety deposit box of the German Savings Institution subject to Ackermann's order may, and should, be treated as surplusage, and no proof thereof was necessary. [State v. Vorback, 66 Mo. l. c. 172.] The learned trial judge appreciated this feature of the law and did not submit to the jury the truth of the allegation that defendant promised to keep the note and deed of trust in a safety deposit box of the German Savings Institution subject to the demand of Ackermann. The information is sufficient.

II.   The further contention of defendant is that if any false pretense or false statement was made to **Limitation.** Ackermann which induced him to deliver the $4000 check to defendant, that statement was made in the note dated May 6, 1908, and consequently the crime was committed, if committed at all, more than three years before May 9, 1911, the date when the information was filed. This assignment must likewise be overruled. While the note of May 6, 1908, contains a false recital that the $4000 note and deed of trust which Ackermann was trying to purchase "had been pledged with said Louis Ackermann," etc., and that false recital might have aided in deceiving ' Ackermann, there is not a word in the record to indicate that Ackermann ever saw the note of May 6, 1908 (hereinbefore set out) until May 14, 1908, when it was delivered to him. Mere lying or misrepresentation is not of itself a crime. It is only when a misrepresentation bears fruit by causing some one to part with money or property that section 4565, Revised Statutes 1909, is violated. In the opinion of the writer false representations which result in a crime should be

treated as having been made at the time the victim of such false reresentations delivers his money or property to the person making the false statements.

III.  It is unnecessary to repeat the evidence in passing upon defendant's contention that it is insufficient to support the judgment.  A fair synopsis of the material evidence may be found in our statement of the case.

Sufficiency of evidence.

The evidence of defendant would indicate that he was not guilty of any crime or even of deception, while the testimony of Ackermann and his sister makes out a clear prima-facie case of guilt.  The jury looked into the faces of these witnesses and were in a far better position to judge of the truthfulness of their statements then we are.  But even looking at the evidence in cold type we are convinced that the written documents introduced (the authenticity of which is conceded) more strongly corroborate the evidence of Ackermann than the evidence of defendant.

It was the special province of the jury to weigh the evidence and we will not disturb their verdict. There being no reversible error in the record the judgment of the trial court is affirmed.

*Walker* and *Faris, JJ.* concur.