# THE STATE v. AMANDA H. SAMIS et al., Appellants.

### Division Two, December 22, 1922.

1. **FALSE PRETENSE: Information.** An information in the language of the statute (Sec. 3343, R. S. 1919), charging that defendants by false and fraudulent representations obtained the check of prosecutrix for five thousand dollars, in the form often approved by this court, is held to be free from infirmity.

2. ———: ———: **Specific Request for Check.** It is not necessary that the information charging false pretense specifically charge that defendants requested the prosecutrix to contribute a check to the fictitious loan.

3. ———: ———: **Representing Illegal Transaction.** The fact that the defendants represented that they could do something which they legally could not do, or that their representations showed on their face that they were powerless to enter into the contract for their supposed principals, does not affect the validity of an information charging false pretense. The making of the false representations to prosecutrix, the delivery of her check in reliance upon them, the intent of the defendants to defraud and their knowledge that their representations were false, constitute the crime of obtaining property by false pretenses denounced by the statute (Sec. 3343, R. S. 1919), and when all these things appear in the information it is sufficient.

4. ———: **Proof that Representations Were False: Fictitious Millionaires.** A Mrs. Tranin represented that she was making investments for certain persons in St. Louis engaged in the junk business and making millions out of war contracts; that she represented the Travises and Livingstons who were owners of large oil refineries in Oklahoma; that her clients were multimillionaires, and that investments in her enterprises would yield enormous profits and dividends ranging from twenty-five to one hundred per cent. Mrs. Samis, another defendant, early became associated with her in these enterprises, and the record shows many notes and checks pertaining to transactions with various persons, by which money was borrowed by Mrs. Samis, sometimes paid back with usurious interest or a profit of fifty to seventy-five per cent, and frequently borrowed again for re-investment, or the notes were renewed for fifty to one hundred per cent more than their original amounts. Both women called upon prosecutrix and told her they were getting up a fifty-thousand-dollar loan for the Livingstons and Travises.

and asked her to take five thousand dollars of it. They told her that the Travises and Livingstons had oil securities in the bank covering the loan, that "they had all kinds of money coming in," that she was amply secured, that the investment would pay at least one hundred per cent, and that if she wanted her money back in a month she could get it. Upon these and other like representations, she drew her check for five thousand dollars, payable to Mrs. Samis, who cashed it. There was no evidence that there were such persons as the Livingstons or Travises, or that Mrs. Tranin represented anyone whatever in the junk business or in the oil business or any other business. *Held*, that, in the absence of any showing of the truth of the representations, slight direct evidence of their fraudulent character is sufficient to sustain a verdict of guilty of the offense of obtaining property by false pretenses; and there being evidence that a "crash" came, that the money received by both women was deposited to the credit of one or the other, that none of it was invested anywhere, that some of it was used by them for their own personal uses, that the profits received by some of the lenders were the losses of others, that there were losses on the part of a great many people, and many other facts set out in the opinion indicating the fraudulent character of the representations, a demurrer to the evidence offered by Mrs. Samis, on the theory that the evidence failed to show that any of the statements relating to the securities were untrue, or that the enterprises in which the many persons invested their money were not as represented, was properly overruled.

5.  ———: Insufficient Evidence. Where there was no evidence that the husband of one of the guilty defendants participated in the fraudulent scheme, or that he was a member of the conspiracy, or that he knew anything about the fraudulent transaction by which his wife and another, by false representations, induced prosecutrix to sign a check for five thousand dollars payable to his wife, except that he indorsed it, his demurrer to the evidence should have been sustained.

6.  TRIAL: Improper Remarks: No Assignment in Motion for New Trial. Alleged improper remarks made by the prosecuting attorney in the conduct of the case, unless assigned as error in the motion for a new trial, will not be reviewed on appeal.

7.  FALSE PRETENSE: Evidence: Other Fraudulent Transactions. In a prosecution for obtaining property by false pretenses evidence showing other transactions by defendants and their co-indictees wherein a great many other people were induced to invest in the enterprise in which defendants were engaged, is admissible, as showing a course of conduct and dealing on their part and the in-

State v. Samis.

tent with which they induced prosecutrix to invest her money in the enterprise.

8 ——: ——: **Admissions by Co-Indictee.** Admissions by a co-indictee that she had, by false representations and as a part of the general enterprise to defraud, obtained the money of another and turned it over to defendant, made in the presence of said defendant and not denied by her, are admissible in evidence in the trial of defendant for obtaining property by false pretenses.

9. ——: ——: **Admissions by Co-Conspirator.** The statement of one conspirator made during the continuance of the conspiracy is admissible evidence against the others; and a long course of dealing between defendant and another, in which by joint participation in a fraudulent enterprise and concert of action they obtained the money of many persons, establishes the conspiracy; and an admission made by such other during its continuance is admissible in evidence against the defendant.

10. **JUROR: Qualifications: Formed Opinion of Defendant's Guilt.** A juror, in the course of his qualifying examination, stated that he had formed and expressed an opinion as to defendant's guilt or innocence, and that it would require clear evidence to remove that opinion in reaching a verdict, but would try the case solely on the testimony, and be guided by that alone. *Held*, that he was a qualified juror.

Appeal from Jackson Criminal Court.—*Hon. E. E. Porterfield,* Judge.

AFFIRMED as to Amanda H. Samis; REVERSED as to Robert E. Samis.

*R. R. Brewster* and *William B. Bostian* for appellants.

(1)   The information is fatally defective in that it failed to allege that the defendants, named therein, or or any of them, requested Mrs. Esther Harvey to contribute to said fifty-thousand-dollar loan, or that she did deliver to the defendants said five thousand dollar check for such purpose.  State v. Timeus, 232 Mo. 177; State v.

Thierauf, 167 Mo. 429; State v. Hayward, 83 Mo. 299; State v. Saunders, 63 Mo. 482; State v. Norman, 232 S. W. 452; State v. Sekrit, 130 Mo. 406; State v. Bonnell, 46 Mo. 395. (2) An information is fatally defective which charges that the defendants made representations which, if true, showed conclusively defendants had no right to sell certain property in their possession, but only to hold the same as collateral for a loan, and then alleges that the prosecutrix, believing said representations to be true relying thereon and being induced thereby, did.purchase said property from the defendants. State v. Latshaw, 63 Mo. App. 496; State v. Burgess, 268 Mo. 407; State v. Eudaly, 188 S. W. 110. (3) If the information upon its fact conclusively shows that the prosecutrix could not have relied upon the alleged false representations and pretenses and acted thereon in parting with her money and property in the way and manner and for the purpose alleged, it is fatally defective. State v. Eudaly, 188 .S. W. 110; State v. Burgess, 268 Mo. 407; State v. Young, 266 Mo. 723; State v. Johnston, 154 Mo. App. 265; State v. Phelan, 159 Mo. 122. (4) If it is held that the information charged that Mrs. Esther Harvey, the prosecutrix, paid out her check for the purpose and with the intention of having the proceeds thereof used in the loan of fifty thousand dollars for the Travises and Livingstons, there is a failure of proof and a fatal variance between the allegations of the information and the evidence, because the record shows Mrs. Harvey testified she delivered the check to the defendants in exchange and for the purpose of being invested in certain oil securities. State v. Latshaw, 63 Mo. App. 496; State v. Burgess, 268 Mo. 407; State v. Eudaly, 188 S. W. 110. (5) The information is fatally defective in that it does not acquaint the defendants with the nature and character of the accusations against them and is, hence, violative of. Art. 2, Sec. 22, Mo. Constitution. State v. Barnes, 281 Mo. 514; State v. Thothos, 147 Mo. App. 596; State v. Hayward, 83 Mo. 299; State v. Burgess, 268 Mo. 407;

State v. Timens, 232 Mo. 177; State v. Hathaway, 106 Mo. 236; State v. Stowe, 132 Mo. 204; State v. Marion, 235 Mo. 359, 372; State v. Barbee, 136 Mo. 443; State v. Terry, 109 Mo. 613; State v. Austin, 113 Mo. 538; State v. McBrien, 265 Mo. 594, 611. (6) The assistant prosecuting attorney stated in the presence of the jury that he had had the defendant, Amanda H. Samis, indicted because he believed that she was guilty. This was gross misconduct, prejudiced the rights of the defendant and created a prejudice and passion upon the part of the jury and is reversible error. State v. Stegner, 276 Mo. 427; State v. Eudaly, 188 S. W. 110; State v. Hess, 240 Mo. 159; State v. Webb, 254 Mo. 435; State v. Phillips, 233 Mo. 299. (7) Statements and acts of Emma Tranin could not properly be shown in evidence against the defendants, unless there was testimony in the record tending to show that the defendants had entered into a conspiracy with the said Emma Tranin and that said statements and acts were said and done in carrying out said conspiracy, and there was no proof submitted of conspiracy. State v. Boatright, 182 Mo. 33; State v. Little, 228 Mo. 273, 299. (8) The statement of Emma Tranin, an alleged accomplice, at the so-called "tea party," was not admissible in evidence against these defendants for the reason, first, that no conspiracy had been shown; second, that if there was evidence of conspiracy, the purposes of the conspiracy had been accomplished and it was at an end prior to the utterance of said alleged statement. State v. Eudaly, 188 S. W. 110; State v. Forshee, 199 Mo. 145; State v. Frisby, 204 S. W. 3; State v. Boatright, 182 Mo. 33; State v. Spray, 174 Mo. 569. (9) There was no evidence in the record tending to show the defendants guilty of the offense charged in the information. State v. Eudaly, 188 S. W. 110; State v. Frisby, 204 S. W. 3; State v. Forshee, 199 Mo. 145; State v. Boatright, 182 Mo. 33; State v. James, 133 Mo. App. 300; State v. McBrien, 265 Mo. 594, 611.

*Jesse W. Barrett,* Attorney-General, and *J. Henry Caruthers,* Special Assistant Attorney-General, for respondent.

(1) The information is in approved form and sufficient. Sec. 3343, R. S. 1919; State v. Shout, 263 Mo. 367; State v. Gerhardt, 248 Mo. 543; State v. Foley, 247 Mo. 627; State v. Donaldson, 243 Mo. 465; State v. Martin, 226 Mo. 543. (2) The information contains allegations of three separate false representations, proof of any one of which will sustain the conviction. State v. Gerhardt, 248 Mo. 543; State v. Keyes, 196 Mo. 136; State v. Miller, 212 Mo. 78; 2 Bishop's New Criminal Law, sec. 418. (3) The essence of the crime of obtaining money or property by false pretenses, is that the false pretense should be of a past event, or of a fact having a present existence, and that the prosecuting witness believed the pretense was true; and that, confiding in the truth of the pretense, and by reason thereof, parted with his money or property. State v. Vorback, 66 Mo. 172; State v. Evers, 49 Mo. 542. (4) The remark of counsel respecting his belief of this defendant's guilt is not properly before the court for review, as it was not brought to the attention of the trial court in appellants' motion for new trial. Furthermore, the trial court struck same from the record and directed the jury not to consider same. State v. Clapper, 203 Mo. 553; State v. Miles, 199 Mo. 547. (5) A conspiracy has been defined to be "a combination of two or more persons by some concerted action to accomplish some criminal or unlawful purpose." State v. Davies, 80 Mo. App. 246. There is much evidence in the record showing that Emma Tranin and appellants were acting in "concert" in making false and fraudulent representations to secure money, hence it was not error to admit statements and acts of Emma Tranin in connection with their Harvey transactions. The statement of Emma Tranin at the so-called "tea party" about the disposition of the money she and co-

defendants had fraudulently secured was competent to show the falsity of the many representations theretofore made in connection therewith. (6) There was ample evidence of appellants' guilt and the verdict will not be disturbed on that ground. State v. Fields, 234 Mo. 627; State v. Sharp, 233 Mo. 298.

WHITE, C.—The defendants Amanda Samis and Robert E. Samis, and Emma Tranin and Samuel T. Tranin, were charged jointly by information filed in the Criminal Court of Jackson County, with obtaining property by false pretenses, in violation of Section 3343, Revised Statutes 1919. The property described was a check for five thousand dollars, signed by one Esther Harvey, which check was alleged to be of the value of five thousand dollars and the property of the said Esther Harvey.

The Tranins obtained a severance and a continuance. Amanda and Robert E. Samis went to trial before a jury, and on the twenty-sixth day of June, 1920, were found guilty as charged in the information, and the punishment of each assessed at four years' imprisonment in the penitentiary. They appealed in due form.

The evidence shows that for about two years Mrs. Tranin was engaged in extracting money from numerous people in Kansas City for the purpose of alleged investments. She claimed that she was making investments for certain persons in St. Louis engaged in the junk business who made millions out of war contracts. She also said she represented what she called the Travises and Livingstons, owners of large refineries in Tulsa, Oklahoma. She claimed also to be dealing in platinum. She represented that her clients were multimillionaires and that the investments in which she induced her victims to place their money would yield enormous profits, dividends ranging from twenty-five to one hundred per cent. Many persons were led to invest money in these supposed enterprises. Mrs. Tranin's bank account was introduced in evidence

showing large and frequent deposits covering a long period.

The defendant, Mrs. Samis, early became associated with her in these enterprises, and the record shows many checks and notes affecting transactions with various persons, where money was borrowed by her, sometimes paid back with usurious interest, a profit of from fifty to seventy-five per cent, and frequently borrowed again for re-investment. In many instances notes were renewed at from fifty to one hundred per cent more than the original notes. This represented the profits which the various lenders were receiving from the supposed investments. The evidence indicates that no real investments were made of any of this money.

On the eleventh day of March, 1919, while these business transactions were in full operation, Mrs. Esther Harvey signed a check for five thousand dollars on the Western Exchange Bank of Kansas City, payable to Mrs. R. E. Samis. It was endorsed on the back by Mrs. Esther Harvey and R. E. Samis and cashed by Mrs. Samis. The way this check was obtained is described by Mrs. Harvey. She was engaged in the paint-and-glass business in Kansas City. In March, 1919, Mrs. Samis came to her place of business and told her that "they" (evidently meaning herself and Mrs. Tranin) were getting up a fifty-thousand-dollar investment with the Livingstons and Travises, and she wanted Mrs. Harvey to have five thousand dollars of it. Afterwards Mrs. Tranin and Mrs. Samis came back together and talked to Mrs. Harvey for two hours. They told Mrs. Harvey that she was amply secured, that they had oil securities in the bank, and that the books were in the bank all figured out, and that there was no chance for her to lose. Mrs. Samis told her that it would pay at least one hundred per cent; that they had all kinds of money coming in, "and if I wanted it back in a month I could get it and it would be a permanent investment and there would be nobody in it but the Samises, Tranins and myself afterwards." Both

Mrs. Samis and Mrs. Tranin said the Travises and the Livingstons had securities in the Gate City Bank covering the loans, and had securities back of the fifty-thousand-dollar loan they were negotiating. Mrs. Samis told her that she was familiar with the Livingstons and had been to Mrs. Travis's home on Troost Avenue. These representations were repeated several times in different forms, according to Mrs. Harvey.

Mrs. Samis testified that she paid the money, the proceeds of the check, over to Mrs. Harvey, but Mrs. Harvey denied that she ever received the money; she said that the entire five thousand dollars was lost to her; that Mrs. Samis afterwards told her that she gave the money to a Mrs. Gilchrist in the Vogue Shop in the Muehlebach Hotel.

It was further shown that Mrs. Harvey induced a number of her friends to loan money to Mrs. Tranin and Mrs. Samis, in many of which instances she went on their notes and afterwards paid the people who thus had loaned the money. Mrs. Harvey loaned other money at other times to Mrs. Samis and Mrs. Tranin, and afterwards received notes for fifty per cent and sometimes seventy-five per cent in addition to the amounts loaned.

There was an attempt on the part of the defendants to show that the enterprise was peculiarly that of Mrs. Tranin; that Mrs. Samis herself was one of the victims and lost money in the enterprise. Mrs. Harvey testified that in giving her check she replied upon Mrs. Samis's word; she knew Mrs. Tranin only through Mrs. Samis, and that, with two exceptions, Mrs. Samis was with Mrs. Tranin every time Mrs. Tranin came to see her.

The testimony as to the actual facts about the alleged investments "and securities" is very meagre. The witnesses mentioned when the "crash" came, though it is not explained what happened at that time. It is asserted by the appellant that no evidence shows any of the statements relating to the securities, were untrue, or that the enterprises in which the people were investing their

money were not as represented. In the opinion we will refer to such facts as relate to that matter. It is also claimed that the defendant, R. E. Samis had nothing to do with the transaction involving the obtaining of Mrs. Harvey's money. The facts relating to that will also be noted in the opinion. On the evidence as introduced both of the defendants were found guilty as stated.

I. Appellant attacks the information as being insufficient to support the conviction. The information sets forth that on the eleventh day of March, 1919, Emma Tranin, Samuel T. Tranin, Amanda H. Samis and R. E. Samis feloniously and designedly, with intent to cheat and defraud one Esther Harvey, did rep-

Information.      resent, pretend and say to said Esther Harvey that the Travis and Livingston families were then and there multimillionaire dealers, and owned and operated large oil refineries in the city of Tulsa, in the State of Oklahoma, and did then and there apply to and request that they the said Emma Tranin and Samuel T. Tranin, and Amanda H. Samis and R. E. Samis negotiate and raise a loan for them in the sum of fifty thousand dollars; that the said Tranins and Samises, with such felonious design, etc., pretended, represented and said to the said Esther Harvey that the said Livingstons had placed in their possession securities of said oil refineries to secure a loan of fifty thousand dollars, which the said Travises and Livingstons had requested the said Tranins and Samises to negotiate for them; that the Tranins and Samises further represented that they were familiar with the said securities of the oil refinery, as aforesaid, paying one hundred per cent upon the money invested; that the said Esther Harvey, believing the false statements and pretenses so made, and relying upon and being deceived thereby, was induced by reason thereof to pay, and did pay and deliver to the said Emma Tranin, Samuel Tranin, Amanda Samis and R. E. Samis a check for the amount of five thousand dollars for the purpose of it

being invested. The check is then set out in the information. It is then alleged that the said Tranins and Samises, by means of the fraudulent statements and pretenses as aforesaid, obtained from the said Esther Harvey a five-thousand-dollar check of the value of five thousand dollars, the personal property of the said Esther Harvey.

The falsity of the pretenses is averred in that in truth and in fact the Travises and Livingstons had not made any arrangement with the said parties to raise a loan of fifty thousand dollars; that the Tranins and Samises were not familiar with the securities and their value; that the Travises and Livingstons had not placed securities in their possession to cover the said loan, nor any amount whatever, and in truth and in fact said securities were not paying one hundred per cent on the money invested in them. That all the statements made by the Tranins and Samises to the said Esther Harvey were false and fraudulent, which they all then and there well and truly knew.

This information contains the language of the statute, Section 3343, and is in the form frequently approved by this court. [State v. Martin, 226 Mo. 538, l. c. 548; State v. Gerhart, 248 Mo. 535; State v. Donaldson, 243 Mo. 460, l. c. 473; State v. Shout, 263 Mo. 360, l. c. 367-8.]

Appellant claims that the information is defective because it fails to allege that the defendants requested Mrs. Esther Harvey to contribute a five-thousand-dollar check to the loan. Such specific averment is not necessary, as shown by the cases cited; it is alleged that with the design to cheat and defraud the said Esther Harvey they represented the securities to be good, and that they were negotiating a loan, and that she was induced by said false statements to deliver to them her check for five thousand dollars. It was that moving cause which induced the victim to part with her money, and constitutes the false pretense.

Other objections made to the form of the informa-

tion are without merit. The fact that the defendants represented that they could do something which legally they could not do; that their statements showed on their face they were powerless to enter for their supposed principals the contract, does not affect the criminal act. The making of the false representations, the delivery of the check in reliance upon them, the ownership of the property obtained and its value, the intent of the perpetrators of the fraud, the knowledge that the representations were false—all elements of the crime—appear in the information.

II. It is argued that a case was not made out against Mrs. Samis because it was not shown in fact that the representations, which induced Mrs. Harvey to part with her money were false.

Sufficient
Evidence.

There was nothing to show that there were such persons as the Livingstons or Travises, or that the Tranins represented anybody whatsoever in the junk business in Saint Louis, or that they had any interest in any platinum enterprise, or that they represented anybody in the oil business or any other business.

This entire absence of any showing of the truth of representations leaves the case in a condition such that slight direct evidence of the fraudulent character of statements is sufficient to sustain the verdict.

In several places in the evidence the "crash" is mentioned. It is shown all through that none of the loans were of any value. The profits which some of the lenders received were the losses of other victims. There is evidence tending to show that no money received by the Tranins or Mrs. Samis ever was invested anywhere. It was deposited to the credit of Mrs. Tranin or Mrs. Samis; some of it was used by them for their own personal purposes, and some of it repaid to lenders. There were great losses on the part of a great many people, including Mrs. Harvey.

On one occasion there was a tea party where many of the persons interested were present. This party, in the minds of the witnesses, seems to be associated with the time of the "crash." What developments occurred to constitute the "crash" is not clearly stated by any witness, but it evidently meant the complete exposure of the fraudulent scheme in which the defendants were engaged. A Mrs. Patrick, one of the victims of the scheme, testified to representations made to her by Mrs. Tranin very similar in character to those made to Mrs. Harvey about the multimillionaire junk dealer in Saint Louis, the corner in platinum, and the oil refining stock. She then testified that on the day of the tea party she approached Mrs. Tranin and extended her hand and Mrs. Tranin exclaimed, "Stay away from me, don't come near me, I'm a thief. I stole your money; there never was any investment." This was said in the presence of Mrs. Samis. The remarks evidently referred to the joint enterprises in which Mrs. Samis and Mrs. Tranin were engaged. Mrs. Samis made no denial of this statement about the non-existence of the alleged securities. The witness at the same time asked Mrs. Tranin: "What did you do with the $2500 I gave you Saturday?" Mrs. Tranin replied, "I gave it to Mrs. Samis." Mrs. Samis denied that she got it. All of that took place in the same conversation. The fact that Mrs. Samis singled out the one statement of Mrs. Tranin for denial, without denying the other, is evidence of the falsity of the representations that the Livingstons and the Travises put securities in the hands of Mrs. Tranin. Mrs. Samis stated to more than one witness that she had made a great deal of money out of the business, and had bought a great many things for her daughter and her sister back east; that she had some property and a store on Grand Avenue, and had made three thousand dollars for her husband to start in business. This evidence, together with her association for a long time in the business with Mrs. Tranin, is sufficient to justify

the conclusions that the representations as to the character of the investments which she so induced people to make were false, that she knew them to be false, and that she profited by them. The jury might properly infer that in making money out of the deals she knew how it was made, and knew it did not come from investments with any multimillionaires whom she and Mrs. Tranin claimed to represent.

The demurrer to the evidence was properly overruled as to Mrs. Amanda Samis.

III. The evidence by which it was attempted to connect R. E. Samis with the transactions is about as follows:

Mrs. Harvey testified that on one occasion she drove with Mrs. Samis to see some of the people from whom they were getting money, and Mrs. Samis decided that she wanted to get three hundred dollars from Bob (Mr. Samis) that day, and Mr. Samis made out a check to Mrs. Harvey. At the time of making the check, Samis, who was investing in weed chains for automobiles, said he could not afford to give this money, that he had his bills to pay. Mrs. Samis told him not to worry, that she would have plenty of money to buy chains.

**Insufficient Evidence.**

On another occasion when Mrs. Harvey was driving past Mrs. Samis's store she went in. Mr. Samis was there alone, and she told him about a certain check coming back which had been given her by Mrs. Samis. Samis laughed and told her he knew all about it. She asked him, "Do you suppose we will lose our money?" He answered: "Oh, no, she has a lot of rich investors back of her." He told Mrs. Harvey that she would be surprised if she knew the money he was making out of some money he had out at the present time. At another time Mrs. Harvey asked Samis about the transactions in which they were engaged and asked him if he thought they were all right, and he stated that he had eight thou-

sand dollars invested in it and got it all out. On one occasion at the Samis home he got out his bank book and showed his deposits for the week, one of which was eight hundred dollars. It seems all this occurred after Mrs. Harvey gave her check to Mrs. Samis. The evidence further showed, and Samis admitted, that he had paid five hundred dollars for attorneys to defend this case, and that he had offered five hundred dollars to someone to stop the prosecution. The State's attorney called it compounding a felony.

This was all the evidence to connect Robert E. Samis with the transactions. He conducted an automobile supply business with which Mrs. Samis had nothing to do. Mrs. Samis said she concealed from him the nature of her investments, apparently because she thought he would not approve of them. The evidence shows Mrs. Tranin was extremely cautious. She didn't want anybody to know about the transaction in which she engaged excepting the particular persons she dealt with. She didn't want her name to appear on checks and other papers where it might attract attention. A great deal of business was conducted on the sly. There is nothing to show that Robert Samis participated in the profits of the deals, or that he was a member of the conspiracy, or that he knew anything about the Harvey transaction. The State failed to make out a case against him such as would warrant the submission of the evidence to the jury. [State v. Singleton, 243 S. W. 147.]

IV. The appellant complains of the giving of certain instructions. It seems that objections were made **Instructions.** upon a misconception of what the instructions state. The appellant also complains of the refusal of certain instructions offered by him. Such instructions are fully covered by others given.

V. Complaint is made of improper remarks made by the prosecuting attorney in the conduct of the case.

Improper
Remarks.

In the motion for new trial this matter is not assigned as error and therefore is not before the court for review.

VI.   A great deal of evidence was offered to show other transactions of the Samises and Tranins whereby a great many people were induced to invest in the enterprise in which the defendants were engaged.  The proof of the other crimes showed a course of conduct and dealings on the part of the defendants.  The evidence of other fraudulent deals was admissible to show the intent with which the deal complained of was undertaken.  [State v. Patterson, 271 Mo. 1. c. 110; State v. Peck, No. 23704, decided at the present term of this Court and not yet reported, and cases therein cited.]

Other
Transactions.

VII.   Certain admissions by Mrs. Tranin at the so called tea party were produced in evidence; and this is claimed to be error.  As we have seen, some of these statements were made in the presence of Mrs. Samis and not denied by her.  Further, the proof of the conspiracy is sufficient to warrant a finding that it existed between the defendants. The long course of dealing in which Mrs. Tranin and Mrs. Samis were engaged together, with the joint deals on which they obtained money from other people, tends to show that by concert of action they had engaged in that fraudulent scheme together.  A conspiracy may be shown by circumstances.  [State v. Kolafa, 291 Mo. 340, 236 S. W. 302, 1. c. 304, 305, and cases cited.]  The statement of one conspirator made during its continuance is admissible against the others.  [State v. Darling, 199 Mo. 1. c. 201; State v. Fields, 234 Mo. 1. c. 623; State v. Bersch, 276 Mo. 1. c. 414; State v. Bobbitt, 228 Mo. 1. c. 257; State v. Roberts, 201 Mo. 1. c. 727-728.]

Admissions by
Co-conspirator.

VIII.   It is contended that the trial court erred in

qualifying a juror. One juror who stated that he had formed and expressed an opinion in relation to the guilt or innocence of the defendants, said that it would require evidence to remove the impression which he had received. On being questioned by the defendant he made this statement: "Unless the evidence is so clear as to break down the opinion you now have, the opinion you now have would enter into your consideration in arriving at your verdict? A. It most certainly would." In answer to other questions the juror further said:

*Jurors.*

"Q. I want to know whether you are going to follow the evidence on the witness stand or be governed by your opinion? A. Yes, I would follow the evidence.

"Q. You said you would try the case based solely on the testimony given by the witnesses on the stand?
"A. Yes sir.

"Q. And you would be guided by that and that alone? A. Yes sir."

Under the frequent ruling of this Court the juror was qualified. [State v. Herring, 268 Mo. 514, l. c. 529, and cases cited.]

The judgment is affirmed as to the defendant Amanda H. Samis, and reversed as to Robert E. Samis, who is discharged. *Railey, C.,* concurs; *Reeves, C.,* absent.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.