## C. J. TROUP v. STATE.

No. A-8000. Opinion Filed May 2, 1931.
Rehearing Denied June 6, 1931.

Withdrawn, Corrected, Refiled, and Application for Leave to File Second Petition for Rehearing Denied Aug. 8, 1931.

(2 Pac. [2d] 591.)

M. D. Hartsell and Kight, Johnson & Kight, for plaintiff in error.

J. Berry King, Atty. Gen., and Edward Crossland, Asst. Atty. Gen., for the State.

CHAPPELL, J.  Plaintiff in error, hereinafter called defendant, was convicted in the district court of Muskogee county of the crime of obtaining money by false pretenses, and his punishment fixed by the court at imprisonment in the state penitentiary for seven years.

The evidence of the state was that Margaret Hilton, the prosecuting witness, had bought four lots in Muskogee county from the defendant, which he had never owned, and had paid thereon $600, the full purchase price; that

she was pressing defendant for a deed to the lots; that on or about the 15th day of August, 1926, defendant took her to the town of Taft, in Muskogee county, and there showed her 20 acres of land and represented to her that he was the owner of that land and had a legal right to sell the same to her; and that, relying on these representations, she agreed to the trade; that she was an ignorant negro woman, unable to read or write, and that she relied absolutely on defendant's representations and promises.

That on the 27th day of August, 1926, the defendant came to Oklahoma City and there entered into a written contract with the prosecuting witness to sell her the 20 acres of land for $2,000; that she paid defendant $10 in cash when the contract was executed; that defendant agreed to allow her a credit of $600, the amount she had paid defendant for the lots, upon the purchase price of $2,000 which she was to pay defendant for the 20 acres of land; that she was to pay the balance of the purchase price of $1,400 in monthly installments of $20. That thereafter she paid defendant various sums of money in other counties of the state, and on the 18th day of August, 1928, $52 as final payment of the purchase price of this property, which payment was made at Wewoka, in Seminole county. That when this $52 was paid, she requested that she be given a deed to the 20 acres; that defendant put her off by various excuses until the latter part of 1930, when an investigation disclosed that the defendant did not then and had never owned any of this land, and his arrest followed.

The state introduced in evidence the contract between the defendant and the prosecuting witness for the purchase price of the twenty acres of land and numerous receipts for money paid the defendant, which receipts recited that the payments had been made in Muskogee county.

The information charges, in substance, that on the the things complained of by the Hilton woman, but admitted that he agreed to sell her some lots in Taft, in 1924, and claimed that there was still a lot of money due him upon that contract. He denied that he made any representations to her that he owned the land at Taft.

Defendant contends first that the court erred in overruling his demurrer to the information, for the reason that it is duplicitous in that it charges the defendant with the commission of more than one offense, and that the information shows upon its face that the transaction was barred by the statute of limitation.

The information charges, in substance that on the 27th day of August, 1926, the defendant did, in Muskogee county, with intent to cheat and defraud one Margaret Hilton, represent that the Troup Realty Company was the owner of 20 acres of land in Park addition to the town of Taft; that defendant, with intent to cheat and defraud said Margaret Hilton, pointed out this property to her, and that Margaret Hilton, relying upon such representations, entered into a written contract to purchase said property and from time to time made payments thereon, which defendant received and receipted for in Muskogee and other counties, until the entire purchase price was paid; that the last payment was made to defendant on the 18th of August, 1928, and that this transaction was all had with intent on the part of the defendant to cheat and defraud the said Margaret Hilton.

The state contends that the making of the contract in 1926 and the payments by Margaret Hilton, including the one on August 18, 1928, was all a part of one continuous criminal transaction, and that she had continued to pay defendant money by reason of his statement to her

that he owned this land, from the day of his original utterance of that statement and the making of the written contract until the last dollar was paid by her. Every time he accepted her money without informing her otherwise, he revived and kept alive his original false statement.

25 Corpus Juris, page 602, states the rule:

"A number of cases have based the criminal liability of the accused upon the doctrine of continuing pretenses, under which, if the pretense is the inducing cause, it is immaterial that there has been a lapse of time between the pretense and the obtaining of the property"—citing numerous authorities to sustain the rule.

In the case of State v. Gerhardt, 248 Mo. 535, 154 S. W. 722, the court said:

"Where three years had not expired from the date that complainant paid over his money to defendant in reliance on defendant's false representations, a prosecution for false pretenses was not barred by limitations, though more than three years had expired from the date of the making of false representations which may have aided in deceiving complainant."

To the same effect is State v. Riley, 65 N. J. Law, 192, 46 A. 700.

To constitute the offense it is necessary that there be false pretenses and the receiving of money or property as a result thereof. Where money or property is obtained within three years, even though the representations may have been made prior to the three years, the case is not barred by the statute of limitation.

Defendant next urges that his demurrer to the information should have been sustained, because it appears upon the face thereof that the venue was not in Muskogee county.

It appears from the evidence of the state that the false representations were made by the defendant at Taft, in Muskogee county; that the contract for the purchase of the land and a payment thereon were made in Oklahoma county; that thereafter some of the payments were made in Caddo county; that the one on August 18, 1928, was made in Seminole county, and certain receipts showed on their face payment was made in Muskogee county, although there was evidence to the contrary.

Section 2429, C. O. S. 1921, provides:

"When a public offense is committed, partly in one county and partly in another county, or the acts or effects constituting or requisite to the offense, occur in two or more counties, the jurisdiction is in either county."

Defendant contends that venue did not lie in Muskogee county because the state failed to show any payments made in that county, supporting this contention upon the authority of Owen v. State, 22 Okla. Cr. 419, 211 Pac. 1059. This case is not in point for the reason that the false pretenses were all made at Sitka, Kan., and the money obtained at Sitka, and placed to the defendant's credit in that bank. Thereafter the defendant went to Harper county, Okla., and drew some checks on that account. The court there properly held that the Oklahoma court was without jurisdiction, since none of the representations nor the obtaining of the money occurred in Oklahoma.

The state of Iowa has a statute identical with section 2429, supra. In the case of State v. Gibson, 132 Iowa, 53, 106 N. W. 270, 271, that court had under consideration the precise question involved here. The defendant, an insurance agent, forwarded applications by mail from Chickasaw county, Iowa, to the Des Moines

Mutual Hail Insurance Association, at Des Moines. Pursuant to defendant's request, the insurance association mailed a check for $24.80 to him drawn upon a bank in Des Moines. This check was received by defendant in Chickasaw county, indorsed by him and cashed by a bank in said county. The check finally reached the Des Moines bank and was honored and charged to the account of the insurance company. The defendant was prosecuted in Polk county, where the applications with the false representations were received by the insurance association.

It was contended that the defendant did not receive the money in Polk county, but in Chickasaw county, and that the district court of Polk county had no jurisdiction. The Supreme Court of Iowa said:

"Under the evidence there can be no doubt that the defendant made the false pretenses with which he is charged in Polk county, Iowa; for the applications were there received and acted upon by the insurance association. Placing the same in the mail to be forwarded to the insurance company was not, so far as the criminal aspect of the case is concerned, a false pretense in the county where the applications were prepared or received by the defendant. State v. House, 55 Iowa, 466, 8 N. W. 307.

"But it is stoutly insisted that the money was procured in Chickasaw county and not in Polk, where Des Moines is situated. We have a statute (Code, § 5157) which provides that when a public offense is committed partly in one county and partly in another, or when the acts or effects constituting or requisite to the offense occur in two or more counties, jurisdiction thereof is in either county. This would seem to settle the question now being considered. Com. v. Goldstein, 3 Pa. Co. Ct. R. 121; Norris v. State, 25 Ohio St. 217, 18 Am. Rep. 291; State v. Lichliter, 95 Mo. 402, 8 S. W. 720; Com. v. Taylor, 105 Mass. 172; Reg. v. Leach, 7 Cox, C. C. 100; People v. Dimick, 107 N. Y. 33, 14 N. E. 178; Reg. v. Jones, 4 Cox,

C. C. 198. Aside from statute there may be some doubt as to the venue of the offense under such a state of facts as is here disclosed. See Roberts v. People [9 Colo. 458], 13 Pac. 630; State v. Palmer [40 Kan. 474], 20 Pac. 270; Burton v. U. S. [196 U. S. 283], 25 S. Ct. 243, 49 L. Ed. 482; State v. Shaeffer, 89 Mo. 271, 1 S. W. 293; Connor v. State [29 Fla. 455], 10 So. 891, 30 Am. St. Rep. 126; Graham v. People [181 Ill. 477], 55 N. E. 179, 47 L. R. A. 731; U. S. v. Plympton, 4 Cranch, C. C. 309, Fed. Cas. No. 16, 058; Bates v. State [124 Wis. 612], 103 N. W. 251 [4 Ann. Cas. 365]; Com. v. Wood, 142 Mass. 459, 8 N. E. 432."

"Without deciding this question, which we regard largely a moot one, it is enough to say that our statute was borrowed from New York, and under the decisions in that state construing this statute the district court of Polk county had jurisdiction. See People v. Dimick, supra."

In People v. Peckens, 153 N. Y. 576, 47 N. E. 883, 886, the New York Court of Appeals said:

"If this crime was committed partly in Ontario county, it is clear that by virtue of that statute the court had jurisdiction, and properly declined to dismiss the indictment, or direct the jury to acquit. The appellant was indicted for having deprived the complainant of the deed and title to her property, situate in Ontario county, by color or aid of fraudulent or false representations and pretenses. It is quite manifest that the allegations in the indictment sufficiently charge that the crime was committed partly in Ontario county and partly in the county of Monroe. The acts and fraudulent representations which induced the prosecutrix to make a deed of her property and obtain an abstract of her title, to send them to the county of Monroe, to be delivered to one of the defendant's confederates, were all alleged and proved to have been made and to have transpired in Ontario county. It is apparent that what occurred in that county constituted a step in, and led up to the consummation of, the crime

charged. But for the acts and representations made and performed there, no crime would have been committed. If one of the confederates had not, when acting as a co-conspirator with the defendant in attempting to deprive her of her property by fraud, falsely represented and pretended to the prosecutrix that he was acting for her, in her interest, and as her agent, in selling her property, no real or pretended sale would have been effected, and the deed would not have existed which was the subject of the crime charged. But for what transpired in that county, no second step would have been taken towards the commission of the offense. Again, it was consummated there by recording the conveyances fraudulently made and procured by the defendant and his confederates. It was in that county that one of the confederates was presented to the complainant, under a false name, as a prospective purchaser of her property, and she was there induced by their fraudulent acts and pretenses to enter into an agreement for its sale to him. Consequently, as at least some of the fraudulent acts and pretenses were made and performed in that county, it is clear that the offense was partly committed there, and the court had jurisdiction." To the same effect are People v. Chapman, 55 Cal. App. 192, 203 Pac. 126; People v. Botkin, 132 Cal. 231, 64 Pac. 286, 84 Am. St. Rep. 39.

Under section 2429, supra, and authorities cited, it is immaterial whether any payments were made in Muskogee county. The venue may be laid where the false representations are made, or in any county where payments were made by reason thereof. Since the representations were made in Muskogee county, the venue was properly laid in that county.

Defendant next contends that the proof of the state failed to show that the full $2,000 purchase price of the real estate had been paid.

Defendant was prosecuted under chapter 33, Session Laws 1923, which provides:

"If the value of the money, property or valuable thing referred to in the preceding paragraph, be more than twenty ($20.00) dollars, any person convicted hereunder shall be deemed guilty of a felony. * * *"

The allegations in the information and the proof of the state establishing the fact that the defendant received more than $20 because of such false representations, the proof was sufficient to support the verdict of the jury.

The other errors complained of by defendant have been carefully considered, and are not deemed of sufficient importance to require a discussion in this opinion.

It appears from the record that the defendant had previously sold the complaining witness, Margaret Hilton, some lots in Muskogee county; that she was a colored woman, unable to read or write; that after her payments were completed, the defendant, being unable to give her legal title to the premises, induced her to accept the contract in the case at bar for the purchase of the twenty acres at Taft, pretending to give her credit on the purchase price for the purchase price of the lots; that defendant then collected from time to time from this ignorant negro woman payments until the full purchase price had been paid thereon; that during all of this time he was not the owner of the land and had never had any interest therein, and was at all times unable to carry out the terms of the contract he had made with her.

The maximum punishment fixed in cases of this kind is seven years in the penitentiary. The facts and circumstances as shown by the evidence in the case justify the infliction of this penalty.

No substantial error appearing upon the record, the cause is affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.