**Charles THOMPSON, Plaintiff In Error,**

v.

**The STATE of Oklahoma, Defendant In Error.**

**No. A–12283.**

Criminal Court of Appeals of Oklahoma.

May 23, 1956.

Harland A. Carter, Okmulgee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

The plaintiff in error, Charles Thompson, defendant below, was charged in the Superior Court of Okmulgee County, Oklahoma, with the crime of robbery with firearms, 21 O.S.1951 § 801, in that he did through aid of a .25 caliber revolver and fear of bodily harm, feloniously take from the Arkansas Fruit Market, and particularly Mrs. Helen Rogers and Charles Coker, the sum of $354. The crime was committed on April 17, 1955, in the aforesaid county and state. The defendant· was tried, convicted by a jury which fixed his punishment at fifteen years in the penitentiary; judgment and sentence were entered accordingly, from which the appeal has been perfected.

Briefly, the facts herein disclose that the defendant, Charles Thompson, and one Edward Anderson, robbed the Arkansas Fruit Market, in the city of Okmulgee, Oklahoma, on April 17, 1955. In the robbery, it appears that they took $354 at the point of a .25 caliber pistol. The record discloses that the defendant, Charles Thompson, furnished the get-away automobile and· was waiting some short distance from the Arkansas Fruit Market while Anderson went into the market, drew the pistol, pointed it at Mrs. Helen Rogers and Charles Coker, and directed them to place the money in a sack, all of which they did. In making his retreat from the market, he observed Coker reaching down, as though to pick up a gun. Anderson said he fired through the window to frighten Coker. Affecting his escape from the scene, he got into the automobile with Charles Thompson, who drove him to Thompson's home and permitted him to hide in the attic. At Thompson's home they divided the money, each taking $177. Later Thompson removed Anderson from his home to the home of his sister, Mrs. Leo Franklin, out in the country, but her husband, Leo Franklin, would not permit him to stay there, but told him of a vacant house up the road, where he spent the night. Anderson later escaped to Beggs, Oklahoma, where he was apprehended and returned to Okmulgee. The defendant was arrested on May 5. On May 7, Anderson pled guilty to the charge herein, and was sentenced to fifteen years in the penitentiary. He and the defendant were placed in adjoining cells in the county jail. Before they were thus incarcerated, a tape recorder was secreted in an advantageous position where the conversation between the two could be heard and recorded by the officers stationed at the end of the cells and not be seen by the defendant. They could, however, see the defendant and Anderson at all times.

Officer Hunter overheard a conversation, and made a tape recording thereof, which lasted about fifty minutes. Subsequent thereto, on May 14, the defendant called the jailer, Howard Nunn, back to his cell, and said he had something that was bothering him. In the conversation, he voluntarily stated that he was only driving the car for this robbery. Prior thereto, he told the officer he had thrown the pistol in Okmulgee Lake, but he confessed to Howard Nunn that the pistol was at Peggy Massie's house and that he would call and identify. Mr. Nunn and tell them Mr. Nunn would be by to pick up the pistol. Later Mr. Nunn and Deputy Sheriff Marvin Shoulders went by and picked up the pistol. In Edward Anderson's testimony, he identified the pistol as

**466**

being the one used during the commission of the robbery.

 It is not necessary to detail all the evidence herein involved. It is sufficient to say that the testimony of Edward Anderson, who testified for the state, is amply corroborated in many details by other witnesses, including the victims and Josephine and Leo Franklin, the defendant's sister and brother-in-law, as well as by the admissions made against interest by the defendant to Mr. Nunn. It is well to note that after telling Mr. Nunn that he only drove the car for the robbery, he said that he wished to plead guilty to the charge. The county attorney called and advised him that if he wished to make a statement, he would have to call his attorney, which was done. Upon calling his attorney, he changed his mind and entered a plea of not guilty.

The defendant urges two contentions: that the court erred in admitting incompetent evidence and in excluding competent evidence offered by the defendant. The defendant's principal contention is that the trial court erred in permitting Assistant Chief of Police Norman Hunter to testify concerning the conversation between Anderson and Thompson which he overheard while they were in adjoining cells in the Okmulgee County Jail, and in permitting the introduction of the tape recording made thereof for the reason that the same was made in violation of the defendant's constitutional rights and that it was done without his knowledge, permission, or consent. In this testimony, Officer Hunter related certain incriminating statements made by the defendant, among some of which are the following: In speaking to Anderson, Thompson said, in substance, you know what the deal was, I know what it was and I could not come up here, and you know the deal before we pulled that deal was that you did not know me and I did not know you and in case somebody got messed up the one on the outside was supposed to help the other one. Then Anderson said to Thompson, if you had gone ahead and pushed me out of town like you supposed to I would not have been in this mess and you would not have been either. Further, Anderson asked him if the gun was sure enough out of circula-

tion, to which Thompson said it was and told Anderson that they would have to look in the bottom of Lake Okmulgee to find it. Anderson asked him why he did not take him out of town that night, and Thompson told him it was because of the condition of his automobile. Further on, Anderson asked Thompson what he thought when he heard the shot. Thompson said he did not know, it sounded as if Anderson wrecked the place.

These and similar admissions were made as overheard by Officer Hunter.

The question thus presented is were these admissions obtained in such manner as to make them inadmissible as evidence, since they were secretly recorded without the defendant's knowledge, permission, or consent, and should they have been excluded from the trial court's record?

This case apparently presents a question of first impression in the state of Oklahoma, but the matter has been passed upon in several other jurisdictions contrary to the defendant's contentions. In 22 C.J.S., Criminal Law, § 731, p. 1249, it is said:

"The admissions and declarations of accused are not incompetent because they were received over a telephone, dictograph, or detectaphone, where the witness receiving them can testify that he knew and recognized his voice, or where his testimony as to the identity of the voice is sufficient to carry the question to the jury, but where the witness is unable to identify the voice as that of accused they are inadmissible as hearsay. The introduction in evidence of 'speak-o-phone' records secretly made of conversations with accused, and the playing of the records in the presence of the jury, has also been held to be proper."

In People v. King, 101 Cal.App.2d 500, 225 P.2d 950, 954, it is held:

"The conversation between Hamilton and King in the jail, as related by the officers who heard the conversation by use of earphones, was properly received in evidence. '(A) witness may testify to part of a conversation if that is all that he heard and it appears to be in-

telligible.' People v. Adamson, 27 Cal.2d 478, 485, 165 P.2d 3, 7."

In State v. Hester, 137 S.C. 145, 134 S.E. 885, a conversation was overheard by means of a dictaphone. In the trial, the officers who heard the conversation testified to numerous statements made by the defendant as heard over the dictaphone. Therein, it was held:

> "Testimony as to conversations between defendants, overheard by use of dictaphone or detectaphone, held admissible."

In State v. Dooley, 208 La. 203, 23 So.2d 46, where the defendant was inveigled into making prejudicial statements against his interests by conspiracy between the officers and his young daughter, with whom the defendant had committed incest, such statements were held to be admissible in evidence, and the weight to be given such testimony was a question for the jury. In State v. Brooks, 92 Mo. 542, 5 S.W. 257, it was held:

> "A confession made by the accused, while confined in jail awaiting trial, to a detective placed thereupon a fictitious charge of crime in order to ingratiate himself with and obtain defendant's confidence, is admissible on the trial of defendant."

In Burton v. State, 107 Ala. 108, 18 So. 284, wherein in a murder case a detective was placed in the jail with the defendant and represented himself to be likewise charged with murder and was planning to escape, the detective was permitted to testify that the defendant told him that he killed Jethro Evans. In Commonwealth v. Clark, 123 Pa. Super. 277, 187 A. 237, it was held that speak-o-phone records secretly made while the defendant was in conversation with the

Attorney General were admissible in evidence. See also Calumet Broadcasting Corp. v. Federal Communications Commission, 82 U.S.App.D.C. 59, 160 F.2d 285, in which it was held phonographic recording of the conversation made without knowledge of participants were admissible in evidence.

We do not believe the trial court erred in permitting this evidence to be introduced as heard by the officers. For surely even the tape recording could not be regarded as any more efficacious than the testimony of the officer from memory as to what he actually heard. The fact that a tape recording was made would certainly not prevent him from giving his oral testimony as to what transpired between Anderson and Thompson, especially where the recording is in evidence for verification of the officer's testimony. We are further of the opinion that the oral testimony did not violate the best evidence rule. Moreover, under prior decisions of this court, the tape recording was admissible in evidence. Williams v. State, 93 Okl.Cr. 260, 226 P.2d 989; Leeth v. State, 94 Okl.Cr. 61, 230 P.2d 942.

The record discloses that a lot of vulgarity and profanity were indulged between this defendant and Edward Anderson and the reason that the state relied on the officer's oral testimony rather than having the tape recording played in open court was to avoid the publication of such immaterial obscenities as were therein contained. The jury, however, was permitted to take the tape recording to their jury room and make such use of it as they felt disposed to do.

The foregoing disposes of the only meritorious contentions herein involved.

Affirmed.

POWELL, J., concurs.