**STATE of Missouri, Respondent,**

v.

**John Paul SPICA, Jr., Appellant.**

**No. 50289.**

Supreme Court of Missouri,

Division No. 2.

March 8, 1965.

Motion for Rehearing or for Transfer to Court En Banc Denied April 12, 1965.

Thomas F. Eagleton, Atty. Gen., Jeremiah D. Finnegan and James J. Murphy, Asst. Attys. Gen., Jefferson City, for respondent.

Norman S. London, St. Louis, for defendant-appellant.

STOCKARD, Commissioner.

John Paul Spica, Jr. was found guilty by a jury of murder in the first degree and his punishment was assessed at life imprisonment. In his appeal from the ensuing judgment he does not challenge the sufficiency of the evidence. For that reason the statement of facts will be in summary form.

On June 8, 1962, John Myszak, a realtor, went to a residence in St. Louis County pursuant to arrangements previously made by telephone to show the premises to a person he thought to be a prospective purchaser. As he stood in the driveway near the street he was shot to death by the occupant of an automobile who then drove away. About a month later the murder weapon, a .38 colt automatic, was found in a nearby grassy vacant area. Neither the person firing the shots nor the automobile in which he was riding was identified.

John Myszak and his wife had previously had domestic difficulties, and she had talked to appellant about her troubles and asked him if he could arrange to have her husband killed. On June 20, after her husband had been killed, Mrs. Myszak called appellant and asked him to come to her home. When appellant arrived, with the knowledge and consent of Mrs. Myszak, Detective Edwards was concealed under some shrubbery near the front entrance of the house. Appellant talked to Mrs. Myszak within the hearing of Detective Edwards, and the substance of that conversation was that Mrs. Myszak thought that the plan to have her husband killed had been "dropped," but that appellant stated that her husband's death "definitely" was the result of their previous conversations and he wanted $5,000, the amount previously agreed to.

Six meetings were had thereafter between Mrs. Myszak and appellant. With the cooperation of the police Mrs. Myszak had concealed on her person a small battery powered radio transmitter. Police officers were located nearby with a receiving set and a tape recorder, and the con-

versations between appellant and Mrs. Myszak at five of these six meetings were recorded. Without detailing the exact conversations, it may be said that appellant told Mrs. Myszak that he had arranged to have her husband killed, and he demanded the payment of $5,000. At the last meeting, Mrs. Myszak gave appellant $1,000 in marked bills furnished to her by the police, and immediately thereafter he was arrested.

Appellant testified on his own behalf, and he stated that Mrs. Myszak had asked him to arrange to have her husband killed, but that he paid no attention to the request because he believed it was the result of her intoxicated condition. He further testified that when he met Mrs Myszak on June 20 and she asked him if her husband's death was the result of their earlier conversations, he then seized upon the opportunity to blackmail her and demand the payment of $5,000.

Turning now to appellant's assignments of error, we will consider first his challenge pertaining to the indictment. He asserts that the "indictment and evidence were at total variance" in that the indictment charged that he "personally committed" the crime of murder, and the evidence was that "appellant had not committed the offense but was merely part of a conspiracy to have the offense committed." By reason of this, appellant asserts, he was denied the opportunity and right to prepare adequately for trial and was denied the right to be advised of the nature of the offense pending against him. No cases are cited.

Section 556.170, RSMo 1959, V.A.M.S., provides that a principal in the second degree in the commission of any felony, or an accessory to any murder or other felony before the fact "may be charged, tried, convicted and punished in the same manner, as the principal in the first degree." An accessory before the fact is defined " 'to be one who, being absent at the time of the crime committed, doth yet procure, counsel, or command another to commit a crime.'" State v. Stidham, Mo., 305 S.W. 2d 7, 15; 22 C.J.S. Criminal Law § 93. Where the common law distinction between principals and accessories before the fact has been abolished by statute, as in Missouri, "an accessory before the fact may be indicted as though he were the principal [see State v. Falco, 330 Mo. 982, 51 S.W.2d 1030; State v. Stidham, supra; State v. Tripp, Mo., 303 S.W.2d 627], without setting out the facts by which he aided and abetted, or advised and procured, the commission of the crime." 42 C.J.S. Indictments and Informations § 148. See also 22 C.J.S. Criminal Law § 82c, and 40 C.J.S. Homicide § 181. Appellant's contention that he was denied the opportunity and right to prepare adequately for trial and the right to be advised of the nature of the offense, implies a reference to Section 18(a), Art. I, Constitution of Missouri, V.A.M.S., wherein it is provided that an accused has the right "to demand the nature and cause of the accusation." However, it has repeatedly been held in other jurisdictions where the issue has been raised that an information or indictment charging an accused as a principal, as authorized by Section 556.170, does not infringe upon the above constitutional provision. See People v. Bliven, 112 N.Y. 79, 19 N.E. 638, 8 Am.St.Rep. 701; State v. Whitman, 103 Minn. 92, 114 N.W. 363, 14 Ann.Cas. 309; State v. Geddes, 22 Mont. 68, 55 P. 919; Sledge v. State, 142 Neb. 350, 354, 6 N.W. 2d 76; Hunter v. State, 47 Ariz. 244, 55 P. 2d 310; State v. Leeper, 199 Iowa 432, 200 N.W. 732; State v. Burch, 199 Iowa 221, 200 N.W. 442; and Scharman v. State, 115 Neb. 109, 211 N.W. 613. The "nature and cause of the accusation" in this case is murder in the first degree as defined by the statutes of Missouri, and that definition includes the acts of an accessory before the fact in procuring the commission of the crime. The State was not required to plead its evidence in the indictment.

On April 27, 1963, when this case was set for trial on May 6, appellant filed a motion for a continuance "for trial at a later

date" on the ground that local newspapers and television stations had given wide publicity to appellant's arrest and had referred to him as a "hoodlum." It was alleged in the motion that as a result of the publicity the "residents of St. Louis County have been prejudiced against [him] and a trial * * * at this time would deny to him his right to a fair and impartial trial." Appellant contends, first, that the trial court erred in overruling his motion for a continuance, and second, that the court "further erred in denying [his] challenges for cause as to jurors who were familiar with the case." No cases are cited.

The trial court has a wide discretion in determining whether an accused is entitled to a continuance on the ground that publicity concerning the case has been such to prevent a fair and impartial trial. State v. Golden, 353 Mo. 585, 183 S.W.2d 109, certiorari denied, 324 U.S. 874, 65 S. Ct. 1013, 89 L.Ed. 1427, Finnigan v. United States, 204 F.2d 105, certiorari denied, 346 U.S. 821, 74 S.Ct. 36, 98 L.Ed. 347. This necessarily is so because the trial court is in a much better position to determine the propriety of a postponement of the trial on this ground than an appellate court, and for this reason "it requires a very strong showing to induce the higher court to interfere." State v. Golden, supra, 183 S.W.2d at p. 113. "As a general rule, and in the absence of extraordinary or unusual circumstances, public excitement or prejudice is not of itself a sufficient cause for the continuance of a criminal case, at least where such excitement or prejudice is not such as to prevent a fair and impartial trial. The mere fact that there has been widespread adverse pretrial publicity about accused does not, by itself, establish the reasonable probability that accused cannot obtain a fair and impartial jury at the trial so as to entitle him to a continuance. In the vast majority of such cases the proper procedure is not to postpone the trial, but to proceed to trial and to determine on the voir dire of the panel and the individual talesmen whether a fair and impartial jury can be selected." 22A C.J.S. Criminal Law § 497. This was the procedure followed in this case. In view of the total circumstances there was nothing in the publicity that was basically unfair, or that was designed to create or would have had the effect of creating public excitement or prejudice against appellant of the nature which would prevent the empaneling of a fair and impartial jury. There was no abuse of discretion on the part of the trial court. See State v. Johnstone, Mo., 335 S.W.2d 199, 206; United States v. Hoffa, D.C., 156 F. Supp. 495; and the annotation in 10 L.Ed. 2d 1243.

Turning now to the second contention, it is the general rule that familiarity alone on the part of a juror with the facts and circumstances of a case which were obtained from news reports pertaining thereto, without the formation of an opinion as to the guilt or innocence of the accused, does not necessarily require disqualification of the juror for cause. 50 C.J.S. Juries §§ 233 and 238; State v. Tiedt, 360 Mo. 594, 229 S.W.2d 582, 584; Annotation, 10 L.Ed.2d 1243 at p. 1265 et seq. Each of the jurors who admitted reading about this case or hearing news reports concerning it stated that he had formed no opinion as to appellant's guilt or innocence and that he could try the case impartially on the evidence. The trial court has considerable discretion in ruling on challenges of jurors who are not disqualified as a matter of law, State v. Taylor, 324 S.W.2d 643, 76 A.L.R.2d 671; State v. Hermann, Mo., 283 S.W.2d 617, and it is evident that in this case the trial court did not abuse its discretion. State v. Romprey, Mo., 339 S.W.2d 746, 750.

Appellant also asserts that error resulted when the trial court "permitted the assistant prosecuting attorney to state to the jury that Mrs. Myszak was a defendant in another murder trial, as there was no evidence presented of that fact and that fact was totally irrelevant, immaterial and in-

competent to the issues of this cause and was highly prejudicial to appellant."

Appellant has reference to two incidents, one of which occurred on voir dire examination and the other in the course of oral argument. On voir dire the prosecuting attorney addressed the panel as follows:

"The charge involved here is murder in the first degree, and it involves the killing of John Myszak on June the 8th of 1962, * * * John Myszak left a Mrs. Marie Myszak as his widow. Endorsed as a witness in this case is a Joseph Myszak who was his brother. Are you acquainted with any of those members of the Myszak family, or for that matter, any other members of the Myszak family?

"Juror No. 15: I know John.

* * * * * *

"Mr. McSweeney: It is in connection with John's death that this case has been brought. Mrs. Myszak is under indictment for first degree murder also. She is not on trial * * *.

"Mr. London: Just a moment."

Counsel for appellant then requested that "the last statement be stricken and the jury instructed to disregard it and the panel be discharged." The trial court refused to discharge the panel but did strike the statement and instructed the jury panel as requested.

 We do not know what the prosecuting attorney would have said if he had not been interrupted, but apparently he wanted to inquire whether the juror's acquaintance with John Myszak and the fact that his widow was also charged with murder would prejudice the juror in the trial of appellant. If this was the purpose of the statement it was not improper. In any event, the trial court did not err in refusing to discharge the jury panel, and it took all the other action requested by appellant.

The other mention of the fact that Mrs. Myszak was charged with the murder of her husband occurred during the argument to the jury. Counsel for appellant, in his argument, stated that Mrs. Myszak was with Oscar Hart on the night her husband was killed, and he then argued as follows: "Now, this is the type of person that she was associating with. * * * How many other people of this type has she approached? Do you know? You will never know, she has not been brought in here as a witness. This case is a farce, without the most important witness there is, and that is Marie Myszak. And the burden is upon the prosecution to prove their case. And they leave a hole like this." The prosecuting attorney then said: "Your Honor, I have to object again to the reference of our failure to call Mrs. Myszak. She is under indictment for murder first degree, and is not available as a witness." Subsequently, in closing argument the prosecuting attorney stated to the jury, in answer to appellant's comment that Mrs. Myszak did not testify, that "Mrs. Myszak is under indictment for murder in the first degree."

Mrs. Myszak and appellant were not jointly indicted, and the fact that she was under separate indictment did not disqualify her from being called by the State as a witness, but as a practical matter she was not "available" because she probably would refuse to testify on the grounds of self-incrimination. Whether or not the reason advanced by the prosecution for not using Mrs. Myszak as a witness was valid, it was made in reply to argument of appellant. See State v. Reagan, Mo., 108 S. W.2d 391; State v. Tiedt, 360 Mo. 594, 229 S.W.2d 582. But, in any event we are not able to see in what manner appellant was prejudiced. He argues in the form of a conclusion that these references were "highly prejudicial," but he has not demonstrated them to be so. We consider the incident on voir dire as not constituting error, and the incident in argument as not being prejudicial to appellant.

The State introduced in evidence the following: (1) testimony by Detective Edwards as to a conversation between appellant and Mrs. Myszak which he overheard; (2) tape recordings, which were played to the jury, of five different conversations between appellant and Mrs. Myszak; and (3) motion pictures of appellant and Mrs. Myszak taken at the time they were engaged in the conversations which were recorded. Appellant asserts this was error.

In this case the recording of the conversations between Mrs. Myszak and appellant and the taking of the motion pictures were done without the knowledge or consent of appellant, but with the knowledge, consent and active cooperation of Mrs. Myszak. Each conversation which was recorded took place in or near Mrs. Myszak's home or in a public place. There was no physical trespass by the police officers or by anyone working with them in obtaining the tape recordings, in taking the motion pictures, or in overhearing the conversation, and at the time appellant was not under arrest. When the motion pictures and the tape recordings were offered in evidence, witnesses identified each tape and film, described in detail the procedure used in obtaining them, identified the conversation so recorded or photographed as to time, place and parties, and explained in detail the mechanical operations involved. The tapes were first played out of the presence of the jury but in the presence of the court, counsel and appellant. In addition, appellant was furnished a typewritten transcript of the contents of the tape recordings. Trial of the case was then recessed until the following morning, and appellant was afforded the opportunity to make objections to all or any part of each recording. Certain matters on the tapes objected to by appellant were excluded by the Court, such as conversations between Mrs. Myszak and others not in the presence of appellant. Those portions of the tapes admitted into evidence by the Court were then played in the presence of the jury.

There is no question concerning the identity of the voices.

Appellant asserts that "said evidence [tapes, film and the testimony of Detective Edwards] resulted from an illegal search and seizure, invasion of privacy, illegal use of comraderie [sic] in crime, and violated the rights of appellant under the First, Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States and Article I, Sections 15, 18(a), 18(b) and 19 of Constitution of the State of Missouri." It may fairly be said that appellant's argument is limited to the contention that there was an unreasonable search and seizure in violation of the Fourth Amendment, and a violation of the privilege against self-incrimination protected by the Fifth Amendment of the Constitution, and by analogy, a violation of the corresponding provisions of the Missouri Constitution. Since appellant has not attempted to demonstrate error in respect to the other matters set forth in his point, we shall not discuss them specifically. It is sufficient to say that our research discloses no error. See the cases cited in the annotations at 58 A.L.R.2d 1024; 97 A.L.R. 2d 1283; and 10 L.Ed.2d 1169.

■ Appellant places considerable reliance on Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081. It was there held, in effect, that all evidence obtained by a search and seizure in violation of the Fourth Amendment is inadmissible in a state court by reason of the due process clause of the Fourteenth Amendment of the Federal Constitution. However, it has long been the rule in Missouri that evidence obtained by an unreasonable search and seizure is not admissible in a criminal case. Supreme Court Rule 33.03, V.A.M.R.; State v. Hunt, Mo., 280 S.W.2d 37.

Appellant cites Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462; On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270; Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944; Goldman v. United States,

316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322. In his argument he quotes from and relies only on statements taken from *dissenting* opinions in the above cases. For this reason we could, with propriety, dispose of the contention thus presented on the basis that appellant, upon whom the burden rests, has not demonstrated error on the part of the trial court. However, no unreasonable search or seizure occurred in this case, and we shall briefly set forth our reasons for this conclusion. Appellant has directed his argument to the use by the State of the tape recordings, and we shall so limit our discussion. It is obvious that if the use of the tape recordings was not in violation of constitutional prohibitions, neither was the use of the motion picture film and the testimony of Detective Edwards.

We have found only three previous cases in this jurisdiction, although there may be others, where sound recordings were used as proof of declarations against interest in a criminal case. See State v. Long, Mo., 336 S.W.2d 378; State v. Perkins, 355 Mo. 851, 198 S.W.2d 704, 168 A.L.R. 920; and State v. Butts, 349 Mo. 213, 159 S.W.2d 790, 140 A.L.R. 1177. None of these cases discuss the issue of an illegal search and seizure. We look, therefore, to cases from other jurisdictions. "The cases are in general agreement as to what constitutes a proper foundation for the admission of a sound recording. They also indicate a reasonably strict adherence to the rules described for testing the admissibility of recordings, which have been outlined as follows: (1) A showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement." 58 A.L.R.2d at p. 1027. See also the numerous cases cited in the annotations at 58 A.L.R. 2d 1024; 97 A.L.R.2d 1283; and 10 L.Ed. 2d 1169. From what we have previously related, it is evident that all preliminary steps for the admission of the tapes were taken, and no extended discussion as to the applicable rules and the cases need be made.

In Olmstead v. United States, supra, it was held that wire tapping is not within the bar of the Fourth Amendment as an unreasonable search and seizure. In Goldman v. United States, supra, the unreasonable search and seizure prohibitions of the Fourth Amendment again were considered when evidence was challenged because it was obtained by government agents using a detectaphone in a room adjoining that of the accused and hearing what he said in telephone conversations with others. The court first held that the Federal Communications Act was not violated, an issue not in the Olmstead case, and then that "the use of the detectaphone by Government agents was not a violation of the Fourth Amendment." This was the first case before that court involving electronic eavesdropping not amounting to a wiretap. In 1961, On Lee v. United States, supra, was decided. There the factual situation was almost identical to that in this case. A friend of the accused carried concealed on his person a small radio transmitter, and conversations between him and the accused were received and recorded by federal agents stationed nearby, and were admitted in evidence against the accused. On appeal the United States Supreme Court was urged to reconsider its prior rulings that in such circumstances there was no violation of the Fourth Amendment, and in response to such request the court held as follows:

"Petitioner urges that if his claim of unlawful search and seizure cannot be sustained on authority, we reconsider the question of Fourth Amendment rights in the field of overheard or intercepted conversations. This apparently is upon the theory that since there was

a radio set involved, he could succeed if he could persuade the Court to overturn the leading case holding wiretapping to be outside the ban of the Fourth Amendment, Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944, and the cases which have followed it. We need not consider this, however, for success in this attempt, which failed in Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322, would be of no aid to petitioner unless he can show that his situation should be treated as wiretapping. The presence of a radio set is not sufficient to suggest more than the most attenuated analogy to wiretapping. Petitioner was talking confidentially and indiscreetly with one he trusted, and he was overheard. This was due to aid from a transmitter and receiver, to be sure, but with the same effect on his privacy as if agent Lee [the one who heard the conversation on the receiving set when it was recorded] had been eavesdropping outside an open window. The use of bifocals, field glasses or the telescope to magnify the object of a witness' vision is not a forbidden search or seizure, even if they focus without his knowledge or consent upon what one supposes to be private indiscretions. It would be a dubious service to the genuine liberties protected by the Fourth Amendment to make them bedfellows with spurious liberties improvised by farfetched analogies which would liken eavesdropping on a conversation, with the connivance of one of the parties, to an unreasonable search or seizure. We find no violation of the Fourth Amendment here."

Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734, 97 A.L.R.2d 1277, involved the situation where there was a physical trespass by use of a "spike mike," and it was held that there was an unreasonable search in violation of the Fourth Amendment, but the Court expressly held that it found "no occasion to re-examine Goldman * * *."

The most recent case by the United States Supreme Court is Lopez v. United States, supra. In that case there was admitted into evidence in support of the charge of attempting to bribe a federal agent a sound recording of accused's conversation made without his knowledge or consent. The court held the recording was properly received in evidence, citing the On Lee case, and added: "The Court has in the past sustained instances of 'electronic eavesdropping' against constitutional challenge, when devices have been used to enable government agents to overhear conversations which would have been beyond the reach of the human ear. * * It has been insisted only that the electronic device not be planted by an unlawful physical invasion of a constitutionally protected area." Other cases in which it has been held that the use of "electronic eavesdropping" does not constitute an unreasonable search and seizure include United States v. Kabot, 2 Cir., 295 F.2d 848, certiorari denied 369 U.S. 803, 82 S.Ct. 641, 7 L.Ed. 2d 550; United States v. Stephenson, D. C., 121 F.Supp. 274, app. dismd. 96 U.S. App.D.C. 44, 223 F.2d 336. In addition, see the numerous federal and state cases, in which such evidence was admitted, cited in the annotations at 58 A.L.R.2d 1024; 97 A.L.R.2d 1283; 10 L.Ed.2d 1169.

▮ Appellant has cited to us no case in which it was held that sound recordings obtained in the manner and by the means used in this case constituted an unreasonable search and seizure. Instead, he has referred to and quoted only from dissenting opinions, not then or now representing the decision of the court, and from a separate concurring opinion in the Lopez case. The Constitution of the United States, including the Fourth Amendment, and the Constitution of the State of Missouri were designed to protect the public as well as the accused in a criminal trial. The human mind is rapidly developing new and ingenious me-

chanical devices, particularly in the field of electronics, all of which are available to the criminally inclined to use in the pursuit of nefarious activity. It is not unreasonable that in the protection of society the police and those charged with the detection of crime should be permitted to use such devices subject to legislative limitations and to the previously imposed limitation that there be no unlawful physical invasion of a constitutionally protected area. We reject the contention that the evidence in this case consisting of the sound recordings, the motion picture film, and the testimony of Detective Edwards, was obtained as a result of an unlawful search and seizure.

We now turn to the question of whether the testimony of Detective Edwards, the sound recordings, and the motion picture film were inadmissible for other reasons. Appellant asserts that he was denied "his right of confrontation and cross-examination," and that the "tape recordings and the testimony of Detective Edwards concerning the portion of the conversation he overheard constitutes hearsay and conclusions."

█ We can dispose of the above contention as to the motion picture film without extended discussion. The persons who operated the camera and processed the film testified and were subject to cross-examination. There was testimony that the motion pictures correctly portrayed what could be and was seen by witnesses. The admissibility of motion pictures as evidence is determined by the basic principles governing the admissibility of still pictures. Morris v. E. I. Du Pont De Nemours & Company, 346 Mo. 126, 139 S.W.2d 984, 129 A.L.R. 352. Appellant cites no case in support of his contention pertaining to the use of motion pictures, and we find no error in admitting them in evidence.

█ We shall consider now the admission in evidence of the sound recordings and the testimony of Detective Edwards. Appellant asserts that this evidence was hearsay, and generally speaking he is correct in that it contained the statements of persons who were not then on the witness stand. However, there are recognized exceptions to the hearsay rule, and when the evidence falls within a recognized exception, neither the objection that it is hearsay nor the objection that the accused is denied the right of confrontation and cross-examination is valid. For example, in a criminal case a dying declaration is admissible in evidence even though the accused is not afforded the right of confrontation or cross-examination of the person who made the declaration. State v. Colvin, 226 Mo. 446, 126 S.W. 448. See State v. Pendergraft, 332 Mo. 301, 58 S.W. 2d 290, pertaining to the admission of business records. As stated in Osborne v. Purdome, Mo., 250 S.W.2d 159, "Lack of opportunity for cross-examination is not a question involved when evidence is admissible under an established exception to the hearsay rule." See also Wigmore on Evidence, 3rd Ed. § 1420.

█ The statements of appellant testified to by Detective Edwards and presented to the jury by use of the sound recordings were admissible in evidence as an established exception to the hearsay rule as admissions against interest. The rule, as stated in 22A C.J.S. Criminal Law § 730, is as follows: "Statements, declarations, and admissions by accused from which an inference of guilt may be drawn are admissible in evidence against him. Such evidence is admissible as an exception to the hearsay rule, without regard to whether or not it constitutes a part of the res gestae." This has long been the rule in Missouri. See State v. Thresher, Mo., 350 S.W.2d 1; State v. Pigques, Mo., 310 S.W.2d 942; State v. Phillips, Mo., 299 S.W.2d 431; State v. Cropper, 327 Mo. 193, 36 S.W.2d 923. In this case appellant's declarations against interest consisted of his part in a conversation, and Detective Edwards could testify to what he heard appellant say. Sergeant Geile supervised the making of the sound recordings, and he testified that

at the time they were made he heard the conversations between appellant and Mrs. Myszak. Instead of his testimony, which necessarily would be subject to the limitations of the human memory, the infallible "memory" of the sound recording was substituted. Appellant cannot complain that he could not cross-examine or confront himself, and while the declarations were hearsay, they were admissible as an exception to the hearsay rule. The assertion that his statements were "conclusions" is of no merit. We consider them to have been admissions of ultimate facts, but in any event the mere assertion that they were "conclusions" without demonstrating them so to be or setting out the specific statements presents nothing for appellate review.

Appellant directs his principal attack, at least as we understand it, at the testimony of Detective Edwards and at the sound recordings on the basis that they contain statements of Mrs. Myszak, and that she was not a witness subject to cross-examination. We turn again to 22A C.J.S. Criminal Law for the general rule as set out in § 734(2) at pp. 1081–1083 as follows: "Where a statement in the nature of an accusation is made to accused and he replies thereto otherwise than by unequivocally denying the accusation in toto, as where he assents to the truth of the charge in whole or in part, or admits it in part and denies it in part, or where he makes an evasive or equivocal reply, or where he follows the denial with an admission of certain facts, the statement and the reply thereto may be received and considered against him to the extent that he admits the truth of the charge, the admission being evidence, and the statement not being direct evidence but admissible only in connection with the reply." As to the application of this rule in Missouri, see State v. Samis, 296 Mo. 471, 246 S.W. 956; State v. Wilson, Mo., 286 S.W.2d 756; State v. Capotelli, 316 Mo. 256, 292 S.W. 42. Testimony of such statements is a recognized exception to the hearsay rule. People v.

Davis, 48 Cal.2d 241, 309 P.2d 1. In this case the conversations consisted of numerous statements on the part of Mrs. Myszak, and numerous statements in reply by appellant amounting to declarations against interest, but to obtain the full significance and meaning of the declarations of appellant the statements of Mrs. Myszak are helpful if not necessary.

Appellant asserts (in answer to the contention of the State in its brief that the statements of Mrs. Myszak were not direct evidence but were admissible in connection with the reply) that "A reading of the supplemental transcript [a transcription of the tapes] * * * reveals numerous instances in which Mrs. Myszak is making direct statements of facts concerning the original plan between appellant and herself, the methods to be used in committing the murder, discrepancies in the plan, and many other direct statements." As we understand the above rule, the fact that the statement made to or in the presence of the appellant which brought forth the reply from him amounting to a declaration against interest was a "direct statement" does not make it inadmissible. On the contrary, that is precisely the form of statement to which the rule applies. However, appellant is not entitled now to complain that some isolated statement of Mrs. Myszak testified to by Detective Edwards or contained on the sound recordings was not strictly within the above rule. To illustrate this we shall set forth the procedure followed.

When Detective Edwards was on the stand appellant asked for and was granted a preliminary examination of him out of the hearing of the jury. At that time appellant's counsel asked "if this conversation [between appellant and Mrs. Myszak about which Detective Edwards was to testify] is going to contain statements by Mrs. Myszak as well as statements by the defendant," and the reply was that "there will be certain references to what Mrs. Myszak said as explanatory of statements made by the defendant; to that degree."

After a discussion in which the above mentioned theory of admissibility was set forth, counsel for appellant made an additional objection "that the testimony would contain conclusions." The Court advised him that "Anything else, I think you ought to advise the court." Detective Edwards then resumed his testimony before the jury and while relating the conversation he heard, appellant entered no objection that any particular statement of Mrs. Myszak was not within the rule of admissibility upon which the State relied. He twice objected on the basis of testimony constituting a conclusion, one being sustained and the other being properly overruled.

We turn now to the procedure followed in connection with the sound recordings. Prior to the time they were played before the jury, they were played before the court and counsel. Appellant made numerous objections directed to the recordings as a whole. As counsel said, "I am objecting to them at this time in their entirety and calling to your attention certain specifics. * * * But, I want the record to show that in pointing out these certain specific matters that I am not limiting myself to them but I am objecting to the exhibits in their entirety." Counsel then pointed out specific matter considered to be objectionable, such as profanity used by appellant, statements of appellant considered to reflect on character and to indicate the commission of other crimes, and statements by Mrs. Myszak out of the presence of appellant. There was no objection made to any particular statement of Mrs. Myszak or portion of the tapes on the basis that it was not within the rule of admissibility upon which the State relied except as to statements of Mrs. Myszak not made in the presence of appellant, and that objection was sustained.

Pursuant to the above rule, statements made by Mrs. Myszak in the presence of or to appellant were admissible as a recognized exception to the hearsay rule. We conclude that appellant has not set forth any statement of Mrs. Myszak presented to the jury which does not fall within the rule, and in addition, if he did attempt to do so on this appeal the particular matter was not objected to in a proper manner at the proper time, and may not now be presented for the first time as error.

We shall now consider other objections made by appellant directed to the complete exclusion of the recordings. Appellant states that they "are inaudible and unintelligible in many respects and, therefore, the admission * * * allowed the jury to speculate as to what was actually contained on said tape recordings."

In Monroe v. United States, 98 U.S.App. D.C. 228, 234 F.2d 49, 54–55, certiorari denied 352 U.S. 873, 77 S.Ct. 94, 1 L.Ed.2d 76, we find this statement: "No all embracing rule on admissibility should flow from partial inaudibility or incompleteness. The Court of Appeals for the Third Circuit, in United States v. Schanerman, 150 F.2d 941, 944, has said that partial inaudibility is no more valid reason for excluding recorded conversations than the failure of a personal witness to overhear all of a conversation should exclude his testimony as to those parts he did hear. Unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy the recording is admissible, * * *." See also Cape v. United States, 9 Cir., 283 F.2d 430, 435; Addison v. United States, 5 Cir., 317 F.2d 808; State v. Slater, 36 Wash.2d 357, 218 P.2d 329; State v. Lyskoski, 47 Wash. 2d 102, 287 P.2d 114; State v. Prokopiou, 8 Utah 2d 259, 332 P.2d 980; People v. Wojahn, 169 Cal.App.2d 135, 337 P.2d 192, 198. The question of admissibility of recordings upon the objection here advanced must necessarily depend upon the particular circumstances of each case, and the trial court has a reasonable discretion in the matter. Monroe v. United States, supra; State v. Prokopiou, supra. In this case the trial court listened to the tape recordings out of the hearing of the jury. The typewritten transcript filed here contains many places indicating that the reporter could not understand the words, but the

transcript does present coherent and meaningful conversations. In addition, appellant testified and did not deny that he said what was audible on the tapes, and although he stated the recordings were not complete, he did not attempt to point out specific matters favorable to him which were not audible. See People v. Wojahn, supra. The trial court properly declined to exclude the tape recordings for this reason.

■ Appellant also asserts that the tape recordings were made in violation of Title 47 U.S.C. § 605, which prohibits the interception of certain communications. We need not discuss this contention in detail. On Lee v. United States, supra, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270, as previously noted, had the precise factual situation here regarding the use of a concealed radio transmitter and the reception and recording of the conversation of an accused. It was there held: "Nor do the facts show a violation of § 605 of the Federal Communications Act. Petitioner had no wires and no wireless. There was no interference with any communications facility which he possessed or was entitled to use. He was not sending messages to anybody or using a system of communications within the Act." Appellant relies on Mapp v. Ohio, supra, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, but since the evidence was not obtained illegally that decision could have no effect here. See also People v. Dinan, 11 N.Y.2d 350, 229 N.Y.S.2d 406, 183 N.E.2d 689; 11 N.Y.2d 1057, 230 N.Y. S.2d 212, 184 N.E.2d 184, certiorari denied 371 U.S. 877, 83 S.Ct. 146, 9 L.Ed.2d 115.

■ Appellant next asserts that the tape recordings "contained profanity allegedly by appellant and statements allegedly by appellant relative to participation in crimes totally unrelated to the charge on trial and such placed into issue the character of appellant when [he] had not chosen to do so."

Appellant apparently does not object to the admission of the profanity as such but only on the basis that it affected his character, and if he did the cases from other jurisdictions where that issue has been presented are to the effect that the use by the accused of vulgar and profane language does not make inadmissible sound recordings containing such language when the recordings are otherwise admissible. State v. Slater, 36 Wash.2d 357, 218 P.2d 329; Thompson v. State, Okl.Crim., 298 P.2d 464; People v. Feld, 305 N.Y. 322, 113 N.E.2d 440; People v. Fratianno, 132 Cal. App.2d 610, 282 P.2d 1002; Annotation 58 A.L.R.2d 1039–1040. It also appears that he does not object to the tape recordings containing statements by him that he had committed other crimes except as those statements reflect on his character. Appellant does not set out in his point the statements to which he has reference, but in his argument he refers to statements by him that he "shot at his partner," that he was involved in "other performances," and statements of "his plans for committing a certain robbery."

When these tape recordings were made appellant was attempting to convince Mrs. Myszak that he did arrange for the murder of her husband, and his method of doing so was to convince her that he was the kind of person who knew the proper persons to arrange for the killing, that he had engaged in similar activity for hire (the "other performances"), and that he did "perform" in this case. The trial court ruled that these statements were material because they constituted part of appellant's effort to prove to Mrs. Myszak that he had arranged for the death of her husband. "In determining whether certain evidence is material, relevant and admissible the courts apply the simple test of whether it tends to prove an issue." State ex rel. Cummings v. Witthaus, 358 Mo. 1088, 219 S.W.2d 383, 389, 8 A.L.R.2d 1124. Here the issue was whether appellant arranged for the murder of John Myszak, and the language he used, including his reference to his other activities in his effort to convince Mrs. Myszak, directly tended to es-

tablish his guilt of the charge against him and was admissible. See State v. Medley, 360 S.W.2d 1032, 232 S.W.2d 519, certiorari denied, Medley v. Eidson, 340 U.S. 956, 71 S.Ct. 568, 95 L.Ed. 689. The jury was entitled to hear the admissions of appellant the way he said them; not after they had been refined by removing therefrom what apparently he considered at the time to be the most convincing way to present them. All evidence offered by the State tending to establish the guilt of the accused affects adversely his character in one sense, but this is not a basis for excluding it.

■ Appellant next asserts the trial court erred in refusing his request for a mistrial under the following circumstances. During the preliminary playing of the tape recordings, appellant objected to statements on the recordings made by Mrs. Myszak not in the presence of appellant, and this objection was sustained and the Court directed that they not be played. When one of the tapes was played the operator of the equipment unintentionally permitted to be played a statement by Mrs. Myszak made out of the presence of appellant which was as follows: "Holy Cow. He wanted me to give him the word to have Joe go, in the next week." The trial court refused appellant's request for a mistrial but promptly instructed the jury to disregard the statement. This incident certainly did not require or warrant the granting of a mistrial. The statement was not prejudicial on its face, and was not of the nature that any latent prejudicial effect could not be removed by the action taken by the trial court. It was a matter within the sound discretion of the trial court. State v. James, Mo., 347 S.W.2d 211.

■ In two separate points appellant asserts that the trial court erred in refusing to permit him to question Captain Vasel, a police officer, concerning hearsay statements made to him by Mrs. Myszak "thereby violating the doctrine of curative admissibility," and in permitting Captain Vasel to testify concerning statements that

he made to Mrs. Myszak and in refusing to allow appellant to testify concerning reasons for making certain statements. In the State's brief it is asserted that these matters are not preserved for appellate review because they were not presented in the motion for new trial. Our examination of the motion discloses that this is correct. In appellant's reply brief he makes no answer to the above contention of the State. The matters are not before us for review. State v. Wilson, 361 Mo. 78, 233 S.W.2d 686; State v. Brookshire, Mo., 353 S.W.2d 681. We add that our examination of them further discloses that they are of no merit if they had been preserved for review.

Appellant asserts that the trial court erred in (1) overruling his motion to inspect before trial the tape recordings, motion picture film, and "statements and police reports," and in (2) overruling his motion to compel Captain Vasel to produce said items on subpoena duces tecum in the taking of his deposition before trial. The issues as to each are the same.

At the hearings on these motions it was established that there was then in existence in the hands of the prosecuting officials or police officers the tape recordings and motion picture film referred to, and that there was also in existence a written statement in question and answer form made to the police by Mrs. Myszak. As previously noted, before the tape recordings were played to the jury, they were played before counsel, appellant and the court, and a typed transcript of the recordings was furnished to appellant. Therefore, as to the tape recordings it is a question of when appellant was entitled to examine the tape recordings, and this is also true in one respect as to the motion picture film because it too was shown at the trial, but apparently not before it was shown to the jury. The statement of Mrs. Myszak was never made available to appellant.

Appellant relies on cases such as State v. Gillman, Mo., 354 S.W.2d 843; State v. Cody, Mo., 379 S.W.2d 570; State v. Mil-

ler, Mo., 368 S.W.2d 353, and others which held in effect that unsuccessful attempts of the accused to obtain certain documents or other evidence in the hands of the prosecution did not result in error because the accused had not followed the required procedure. However, those cases do not mean that by merely following certain procedural steps applicant becomes entitled to the production of physical evidence. The right to inspect evidence in the hands of the prosecution or police, or to have documentary or physical evidence produced pursuant to a subpoena duces tecum, still must be determined on the merits.

In the recent case of State v. Aubuchon, Mo., 381 S.W.2d 807, this court reviewed at length the right of an accused to have produced prior to trial documentary evidence in the hands of the State for purposes of inspection. It was pointed out that "There is no general right of discovery by statute or rule in Missouri in criminal cases," and since "The State is not permitted in any possible way to discover facts from a defendant; we are unwilling to open up, carte blanche, the files of the State to a defendant." It was recognized that "if there is a satisfactory showing that a report or statement of a witness in the hands of the State is of such nature that *without it,* the defendant's trial would be fundamentally unfair, then it should be produced; otherwise not." Appellant does not purport to demonstrate that refusal to turn over to him the motion picture film created any unfair situation. In his testimony he admitted the fact that the conversations took place, and that is all the film would show. As to the tape recordings, they were tapes of his conversations with Mrs. Myszak which he does not deny, and which were made available to him the day before they were admitted into evidence. He now asserts that if he had heard them in advance of trial and heard his own vulgar and obscene language therein he would have exercised differently his peremptory challenges and excluded the two women members of the jury. By rea-

son of the volume of obscenities and vulgar expressions it is inconceivable that appellant did not know of them before trial. They were not of the "slip of the tongue" variety. In addition, when appellant was arrested the police played the tapes in his presence for "thirty, forty minutes perhaps."

Appellant also asserts that he was denied the right to have the tapes examined by experts, apparently to see if they had been tampered with. He does not point out where he requested time for this examination after the tapes were offered in evidence, or that this could not have been done by calling an expert witness to the stand and have him there and then examine them.

 In the absence of any statute or rule of general discovery in a criminal case, and if one is enacted perhaps it should work both ways, appellant was not entitled to the tape recordings and motion picture film in advance of trial, and he has not demonstrated that production of the tape and film earlier than was done was necessary "to make the trial fundamentally fair, balancing this with the public interest." State v. Aubuchon, supra at p. 815.

As to the statement of Mrs. Myszak to the police, this document was never used in the trial of appellant either as evidence or to refresh the recollection of any witness. Appellant cites Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, to the effect that the suppression by the prosecution of evidence *favorable* to an accused upon request violates due process where the evidence is material to guilt or to punishment. We cannot say that this statement is *favorable* to appellant, and we cannot go outside the record to make that determination. Therefore, the record before us does not demonstrate any violation of the rule announced in Brady v. Maryland. Appellant states in his brief that subsequent to his trial the statement was used in a different trial. Therefore, it became public, but he does not assert that it was favorable to him. Apparently it is

his position that the judgment in this case should be reversed, even though the statement is not favorable to him, because he was not permitted to find this out until after the trial. We do not agree.

In two separate points appellant challenges Instruction No. 2, the principal verdict directing instruction, and contends error resulted in refusing three instructions pertaining to alibi.

Instruction No. 2, the principal verdict directing instruction, authorized a verdict of guilty if the jury found and believed "beyond a reasonable doubt that the defendant John P. Spica, Jr., acting either alone or together with another or others" did commit an assault on and kill John Myszak. Appellant asserts error in giving this instruction because "it was the State's theory as announced to the jury during voir dire and closing argument that appellant was not present at the time of the commission of the offense." The only specific objection made to this instruction at trial or in the motion for new trial was that the Court's error in refusing to instruct upon the law of alibi was thereby aggravated. We doubt that the contention now made was preserved for appellate review. However, the issues of the case are contained in the court's instructions, not the argument of counsel. Whether the declarations of law in an instruction given by the court are or are not correct is not a matter governed by comments of counsel in argument. No prejudicial error occurred for the reason asserted.

The point pertaining to the alibi instructions is, in its entirety, as follows: "The Court erred in refusing to give appellant's Instructions Delta O, Delta P and Delta Q, which instructions dealt with the defense of alibi, as appellant had offered evidence of an alibi on the night of the alleged murder and the Court was thereby bound to so instruct the jury." Instructions P and Q were cautionary instructions pertaining to Instruction O.

Therefore, we need to look only to this latter instruction. It provided, among other things, that if the jury found from the evidence "that the Defendant was elsewhere than at the place of the alleged offense, then you should find the Defendant not guilty." In view of the submission of the State by Instruction No. 2, as above set out, it is evident that the fact that appellant may have been "elsewhere than at the place of the alleged offense" would not have authorized a finding of not guilty. Therefore, Instruction O, in the form and substance submitted, was properly refused. State v. Bobbitt, 228 Mo. 252, 128 S.W. 953, 959; State v. Lawrence, Mo., 71 S.W.2d 740; State v. Millsap, 310 Mo. 500, 276 S.W. 625. Appellant does not assign as error the refusal or failure to give any instruction other than the specific ones requested. However, we should point out that " 'an instruction on alibi constitutes no part of the state's case'; and that 'it is not a question of law upon which the court is required to instruct' as a part of the law of the case because 'an instruction on alibi is the converse of the state's main instruction in so far as such main instruction requires the defendant's presence at the scene of the crime'; and, therefore, the rule concerning converse instructions should apply." State v. Hutchin, Mo., 353 S.W.2d 701, 704. As stated in State v. Chaney, Mo., 349 S.W.2d 238, 244, "It is well settled that 'defendants are required to tender a correct converse instruction before they can complain of its refusal * * *.' "

Appellant also asserts that the trial court erred in refusing his requested cautionary instructions pertaining to circumstantial evidence, because "there was no direct evidence against" him, and it is admitted that the "tape recordings offered over objection constitute the only possible link between the offense and the appellant."

Generally stated, when the State's case rests wholly upon circumstantial evidence, the accused, upon proper request, is entitled to have the trial court

instruct the jury on the collateral issue as to the effect of or weight to be given by the jury to circumstantial evidence. State v. Michael, Mo., 361 S.W.2d 664; State v. Regazzi, Mo., 379 S.W.2d 575. However, the giving of such instruction is not mandatory when at least part of the evidence was direct. State v. Huff, 353 Mo. 791, 184 S.W.2d 447; State v. Famber, 358 Mo. 288, 214 S.W.2d 40; State v. Loston, Mo., 234 S.W.2d 535. Admissions by the accused are direct evidence of his guilt. State v. Loston, supra; State v. Criger, Mo., 46 S.W.2d 537. See also State v. Regazzi, supra, for a definition of "direct evidence." The tape recordings introduced in evidence contain admissions, and constitute direct evidence. For this reason, the trial court did not err in refusing the requested cautionary instructions pertaining to circumstantial evidence.

Appellant contends that the trial court erred in permitting Captain Vasel to testify over objection that appellant made "certain statements" because they "were in no way admissions and said statements were at best tantamount to silence and as such were not admissible after appellant's arrest." He also asserts that after admitting these statements the trial court further erred "in restricting cross-examination of Captain Vasel," and that he was thereafter "denied the right to elicit on cross-examination certain statements that were made by appellant at the same time which were beneficial to appellant's position."

■ The testimony of Captain Vasel to which appellant objects was as follows: He stated that during the questioning of appellant after his arrest he was asked about meetings between him and Mrs. Myszak before June 8, 1962, the date of the murder of Mr. Myszak, and appellant stated "if he had engaged in such meetings, and if he had discussed the possibility of murdering John Joseph Myszak, was this to mean that he was guilty of murder." Captain Vasel also testified that when asked whether or not he did meet with Mrs.

Myszak prior to June 8, 1962, appellant replied "Maybe yes, maybe no"; that "if he had engaged in such meetings, that maybe perhaps it was his purpose to blackmail or shakedown Mrs. Myszak," and "that it was too early to make a decision whether or not he would use this as a defense in court." We first note that appellant made no objection to these statements for the reason now advanced on this appeal. The only objection made was limited to the last statement, and that objection was that it was "a conclusion on the part of this witness [Captain Vasel], no materiality of any sort in a case of this nature." Certain general objections were made to all of the testimony of Captain Vasel concerning the statements of appellant after his arrest, and because of them we shall set forth the general rule which governs this contention on its merits. "A statement of accused is to be construed in the light of all the circumstances in determining whether it is incriminating or an admission," and "Any statement or conduct indicating a consciousness of guilt, where at the time or thereafter, a person is charged with crime, is admissible as a circumstance against him on his trial. Thus it may be shown that accused gave false, improbable, or evasive statements to those investigating the crime." 22A C.J.S. Criminal Law § 730, pp. 1029–1030. Measured by this test the statements were admissible, and it was for the jury to determine the weight to be given to them. However, assuming the statements not to be admissions against interest, as appellant contends, he then could not have been prejudiced by their admission, even though the admission was erroneous. Harmless error is not grounds for reversal of a judgment. State v. Davis, Mo., 369 S.W.2d 237; State v. Spikes, Mo., 367 S.W.2d 515.

■ Appellant's contention that the trial court erroneously restricted the cross-examination of Captain Vasel is based on the following occurrence. The court stated, out of the presence of the jury, that they were discussing a portion of the deposition of Captain Vasel, and the further discussion

indicates that the testimony on deposition was to the effect that Captain Vasel had stated that appellant, when questioned after his arrest, had denied his guilt and had stated that at the time of the homicide he was with friends at a restaurant. Counsel for appellant stated, "I feel that this is a proper line of *impeachment* on cross-examination of this witness." (Italics added.) An objection to the use of the deposition for this purpose was properly sustained. Appellant now contends that he was denied the right "to elicit on cross-examination certain statements that were made by appellant at the same time, which statements were beneficial to appellant's position." He cites State v. Wright, 352 Mo. 66, 175 S.W. 2d 866, where it was held that "where the State proves part of single, connected admission or statement of the defendant relating to the same subject matter, the defendant is entitled to show the whole of it." This is a new theory not presented to the trial court at the time or in the motion for new trial. We do not rule whether appellant should have been permitted to show on cross-examination of Captain Vasel that he had made certain self-serving statements, or whether the factual situation here comes within the rule of State v. Wright, supra. Our ruling is that when the trial court rules properly on the matter at the time, we decline to convict him of error on the ground that the evidence was admissible for some other purpose and pursuant to a theory not revealed to the trial court, but which is advanced by appellant for the first time on appeal.

Appellant also asserts prejudicial error resulted when the trial court refused to declare a mistrial. On deposition Captain Vasel was asked by appellant what subjects he advised or told Mrs. Myszak to go into when she was talking to appellant and the conversations between them were being recorded. He replied as follows: "Details about the murder, who his contact man was, could she meet the contact man, things of that nature." He also stated that nothing else came to his mind "at this time." Captain Vasel also testified at a hearing on a motion held prior to trial, and in answer to the request to relate "any of the topics that you suggested to Mrs. Myszak as possible avenues of inquiry," he stated: "I recall some of them being the actual murder weapon, the identity of Spica's accomplices, the fact that he did not actually commit the murder, the immediate need for the payment of the money as payment for the murder. This is all that immediately comes to mind." He then added that he suggested "the vehicle used in the commission of the murder" when appellant asked if he suggested anything relative to an automobile, and that he did not recall suggesting anything about any conversation of Mrs. Myszak. He also stated that the above topics were all he could recall "at this time." When asked if there was "anything that could refresh your memory so you could recall others, if there were others," he said: "Undoubtedly there is something to refresh my memory. However, there is nothing tangible that could refresh my memory on these points." At the trial Captain Vasel testified to "points," to use the language of appellant's counsel, which he had not mentioned on deposition or when testifying on the hearing on the motion, and he refreshed his recollection with "something tangible," apparently a police report but this is not clear. Appellant then moved for a mistrial on the ground that Captain Vasel "has deliberately withheld information from me in the preparation of this case." A similar request was subsequently made.

■ In his brief appellant has made no attempt to set forth what he contends to have been the "vital evidence" withheld from him, and he does not by page reference or otherwise refer us to the record where we may find it. Appellant argues that "In the deposition, * * * in which appellant is in fact entitled to seek discovery, the State [has withheld] vital evidence which is used for the first time during the course of the trial," and it is on the premises of the right of discovery that appellant claims prejudice. We first note that "there is

no general right of discovery by statute or rule in Missouri in criminal cases," State v. Aubuchon, supra, 381 S.W.2d 807, 813, and the right to take depositions is limited to their use conditionally. Supreme Court Rule 25.10, V.A.M.R. We mention this so that by reciting the facts there will be no basis for a contention that we have modified anything said in the Aubuchon case. We note also that appellant cites no case in support of his point on appeal, he has not shown what "vital information" was withheld from him, or that any information was intentionally withheld. The trial court stated at the time it overruled the request for a mistrial that "I am not convinced that there was necessarily a withholding of information. That is one thing. I am not convinced that there was anything more than an oversight on the witness's part." The only request was for a mistrial, and it was properly denied.

Appellant asserts error in the admission in evidence of three photographs taken shortly after the homicide showing the body of John Myszak lying in the driveway. Appellant asserts that they were "of a gruesome and inflammatory nature as said exhibits added nothing to the State's case and appellant had offered to stipulate all matters which could be shown by said exhibits, and said exhibits were, therefore, offered only for the purpose of prejudicing the jury against appellant."

The photographs are black and white, and are not any more gruesome than any photograph of a deceased body taken shortly after death when the death resulted from gunshot wounds of the head. One photograph is a close view of the deceased's body from the waist up, and it clearly shows three of the bullet holes. The other two photographs show the entire body and show its location in the driveway and in relation to the street.

 The theory of the State was that Mr. Myszak was shot to death by a hired killer. There was some indication that there may have been a mistaken iden-

tity on the part of the killer and that the murder may have been the act of a neighbor. The precision shooting, as evidenced by the location of the bullet holes, tended to support the theory of a professional gunman. The location of the body, as revealed by the two photographs showing its position in relation to the driveway and street, tended to corroborate the testimony of the State's witnesses as to the circumstances of the killing, and which also tended to indicate that the murder was not that of one inexperienced in such acts. "Demonstrative evidence of this character is admissible if it tends to connect the accused with the crime, or to prove the identity of the deceased, or show the nature of the wound, or throw any relevant light upon a material matter at issue." State v. Moore, Mo., 303 S.W.2d 60, 65. The fact that there was oral testimony as to the physical conditions shown by the photographs does not render them inadmissible, State v. Tyson, 363 Mo. 1242, 258 S.W.2d 651, 654, and the State having the burden of proving the guilt of the accused beyond a reasonable doubt should not be unduly limited as to the quantum of its proof. State v. Shawley, 334 Mo. 352, 67 S.W.2d 74, 83. The relevant matters shown in the photographs were more graphically presented through the photographs than would have resulted from the words of a stipulation. The State was entitled to use this graphic presentation of this evidence unless the photographs were inadmissible for some other reason, and we conclude that they were not.

 Appellant asserts that the trial court erred in not allowing him sufficient time "to develop further evidence relative to the use of wire taps and in not making the necessary investigation as requested by appellant to determine whether wire taps were used." No cases are cited.

The State offered no evidence which was obtained by wiretapping. At a hearing on a motion to suppress evidence in advance of trial, counsel for Mrs. Myszak, who was not counsel for appellant, testified that

while on a flight to Phoenix, Arizona, a deputy sheriff asked him whether "the wire tap before she [Mrs. Myszak] started cooperating" with the police would be admitted in evidence. This deputy sheriff testified at the same hearing that he had no knowledge of a wire tap, and that he did not recall telling counsel for Mrs. Myszak that there was a wire tap on her telephone.

Appellant apparently seeks to invoke the "fruit of the poisonous tree" doctrine. See Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307. We need not decide whether such doctrine is applicable to this proceeding, but in this connection see Schwartz v. State of Texas, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231; People v. Dinan, 11 N.Y.2d 350, 229 N.Y.S.2d 406, 183 N.E.2d 689; 11 N.Y.2d 1057, 230 N.Y.S. 2d 212, 184 N.E.2d 184, certiorari denied, 371 U.S. 877, 83 S.Ct. 146, 9 L.Ed.2d 115. It is sufficient to say that the hearsay statement concerning a wire tap afforded no basis for the action requested by appellant. The trial court assured counsel that he would "go into this matter further, if I think it is necessary, during the course of the trial," but no further request was made and no additional information was presented to warrant further action.

The last point of appellant to be considered is that the trial court erred "in permitting Captain Vasel to testify as to certain statements allegedly made by appellant after his arrest, when it was apparent from the evidence that the police had handled appellant in such a way as to deny him the right to confer with an attorney." He argues that appellant was arrested at 8:45 o'clock in the evening and instead of being taken to County Police Headquarters where "it would have certainly been more convenient for the police" he was taken to Troop C. Headquarters of the Highway Patrol, and there questioned. Appellant then cites Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246. The contention is

that the conduct of the police, as above set out, constituted an "effort or activity on the part of the police or prosecution to interrogate a suspect in a manner designed to prevent the suspect from having the assistance of counsel as guaranteed him under the Sixth Amendment of the United States Constitution and Section 18a, Article I of the Missouri Constitution," and that "statements obtained as a result of this illegal questioning," are inadmissible.

These constitutional questions were not presented in the motion for new trial, and are not for review. State v. Brookshire, Mo., 325 S.W.2d 497. In addition, there was no objection on this basis to the testimony of Captain Vasel when he related the statements made to him by appellant. Appellant testified, and neither by his testimony nor by other evidence did he offer to show or contend that he at any time made a request to see counsel which was refused, that counsel attempted unsuccessfully to see him, or that he was not advised of his constitutional rights. Neither the Massiah nor the Escobedo case is applicable here, and this contention is without merit.

We have examined every contention of error presented by appellant on this appeal and find no error prejudicial to him.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

STORCKMAN, P. J., and EAGER, J., concur.

FINCH, J., not participating because not a member of the court when cause was submitted.